**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.                                                      No. 97-4098

JESUS ROBERTO GAMA-
BASTIDAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the District of Utah
(D.C. No. 96-CR-192-02-J)
_____

**Submitted on the briefs:**

Benjamin A. Hamilton, Salt Lake City, Utah, for Defendant-Appellant.

Scott M. Matheson, Jr., United States Attorney, and Brooke C. Wells, Assistant United States Attorney, District of Utah, Salt Lake City, Utah, for Plaintiff-Appellee.

_____

Before **BRORBY**, **McKAY**, and **BRISCOE**, Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Pursuant to a written plea agreement, Defendant Mr. Jesus Roberto Gama-Bastidas entered a conditional guilty plea to possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Defendant reserved the right to appeal the district court's denial of his motion to suppress evidence seized as a result of the protective search of his person and the search of the vehicle in which he was traveling as a passenger. See Fed. R. Crim. P. 11(a)(2). Defendant now appeals his conviction, arguing that the district court erred in denying the motion to suppress. Defendant asks us to suppress the evidence seized as a result of the allegedly unconstitutional searches and seizures. The government contends that Defendant has no standing to contest the searches, and it argues that the stop, searches, and seizures were constitutional. Defendant also appeals his sixty-month sentence, challenging the court's refusal to apply section 5C1.2 of the United States Sentencing Guidelines.

**I.**

Our review of a district court's denial of a motion to suppress is governed

by well-established standards of law. We accept the district court's factual findings unless those findings are clearly erroneous, and we consider the totality of the circumstances and view the evidence in a light most favorable to the government.[1] See United States v. Gutierrez-Daniez, 131 F.3d 939, 940-41 (10th Cir. 1997), cert. denied, ___U.S.___, 118 S. Ct. 1334 (1998). The questions of standing and the reasonableness of a search or seizure are questions of law which we review de novo. See id. at 941; United States v. Shareef, 100 F.3d 1491, 1499 (10th Cir. 1996).

On August 26, 1996, the Utah Highway Patrol executed a felony stop on a red Dodge Neon with Arizona license plates at the request of the Salt Lake City FBI Violent Crimes Task Force. R., Supp. Vol. I at 120, 127. This stop led to the discovery of cocaine in the Dodge Neon and to the arrests of the passenger, Defendant, and the driver, co-defendant Mr. Arnulfo Sosa-Garcia.[2]

The FBI began investigating Defendant's brother, co-defendant Mr. Manuel

---

[1] Defendant argues that the we must review the entire record on the motion to dismiss because the district court failed to make sufficient factual findings. When ruling on a motion to suppress, a district court must "state its essential findings on the record." Fed. R. Crim. P. 12(e). After reviewing the record, we are persuaded that the district court's factual findings, although not particularly detailed, encompass the essential facts serving as the foundation for its conclusion that the FBI had probable cause to stop and search. See United States v. Toro-Pelaez, 107 F.3d 819, 824 (10th Cir.), cert. denied, ___U.S.___, 118 S. Ct. 129 (1997).

[2] Co-defendant Mr. Manuel Gama was subsequently arrested as a result of this stop and the seizure of cocaine.

Gama [Mr. Gama], and the Seranos street gang in late March 1996. The FBI suspected that Mr. Gama and members of the gang were involved in drug distribution activities in Salt Lake City, Utah. In August 1996, several confidential informants told the FBI that Mr. Gama was planning to transport a large quantity of cocaine from Arizona for distribution in Salt Lake City. One informant, Informant Five, and a cooperating witness were able to provide particularly detailed information to the FBI because Mr. Gama resided in their home during that time. Informant Five told the FBI that Mr. Gama went to Las Vegas, Nevada, to meet a brother and that he intended to return to Salt Lake City with cocaine.[3] Informant Five and the cooperating witness then notified the FBI that Mr. Gama, claiming to possess four or five kilograms of cocaine, had returned to Salt Lake City in a red Dodge Neon with Arizona license plates on August 24, 1996, and had taken the cocaine to an undisclosed hotel or motel to sell the cocaine. Mr. Gama was accompanied from Las Vegas by Defendant and Mr. Sosa-Garcia. R., Supp. Vol. 1 at 37-38, 95-97.

Between 9:30 p.m. and 10:00 p.m. on August 26, 1996, Informant Five notified an FBI agent that Defendant and another person intended to leave Utah and return to Las Vegas with the unsold cocaine in the red Dodge Neon. That

---

[3] The record reveals that at some point after Mr. Gama's arrest, the FBI independently corroborated that Mr. Gama traveled to Las Vegas by airplane on August 23, 1996.

FBI agent traveled to the apartment complex where Mr. Gama, Informant Five, and the cooperating witness resided, and where Informant Five said the vehicle would be located. Upon arriving at the complex, the FBI agent observed in the parking lot several Hispanic males, including Mr. Gama, standing around the red Dodge Neon with Arizona plates. While the FBI agent began surveilling the Dodge Neon parked outside the apartment, he also was communicating telephonically with Informant Five and the cooperating witness to ascertain additional information. Informant Five told the FBI agent that about one kilogram of cocaine was stashed inside the Dodge Neon, and he advised the FBI agent that one of the occupants of the vehicle may have a firearm. Informant Five then notified the agent that the Dodge Neon would follow a tan or white van when it left the apartment complex and that it would proceed on 7200 South Street to Interstate 15 southbound.

Shortly thereafter, the FBI agent confirmed Informant Five's reports. The FBI agent and several other FBI surveillance officers observed the same Dodge Neon with Arizona plates leave the apartment complex following a tan or white van, proceed on 7200 South, and enter Interstate 15 southbound. Traveling south on Interstate 15 in unmarked cars, the FBI agents continued to follow the Dodge

Neon in an attempt to corroborate that the vehicle was heading to Las Vegas.[4]

When the agents reached Utah County, they contacted the highway patrol to request assistance should they make a stop. Near Springville, Utah, after the agents had been following the same car for approximately one hour and believed that it was en route to Las Vegas, the FBI requested that the Utah Highway Patrol stop the vehicle. R., Supp. Vol. 1 at 47.

At approximately 11:45 p.m., because the FBI agents had information from Informant Five that the occupants of the car may be armed, the Utah Highway Patrol executed a felony stop of the red Dodge Neon. The Highway Patrol ordered Defendant and Mr. Sosa-Garcia out of the vehicle and instructed them to lay face down on the pavement. The FBI officers subsequently approached and handcuffed both men, conducted a pat-down search for weapons, and moved the two men to the rear of the Utah Highway Patrol vehicles.[5] During the initial detention and pat-down, at least one of the officers had a firearm drawn and

---

[4] Interstate 15 is the major corridor, and the most direct route, between Salt Lake City and Las Vegas.

[5] According to the record, an FBI agent removed a file from Defendant's pocket during the protective pat-down, considering it dangerous because it could be used as a knife. Also, a small object fell from Defendant's pants' pocket when he stood up after the pat-down. The FBI later determined that object to be a small amount of cocaine in a plastic bag.

directed toward the suspects.[6]  Several of the FBI agents then began a warrantless search of the vehicle's trunk and interior.  Upon finding several plastic bags containing approximately one-half to one kilogram of cocaine in the trunk, weighing scales in the trunk, and a small plastic bag with cocaine residue in the glove-box, the FBI arrested Defendant and Mr. Sosa-Garcia and impounded the vehicle.  An additional two kilograms of cocaine were discovered in a hidden compartment in the trunk when the vehicle was searched at the FBI impound lot on August 28, 1996.[7]

The bulk of the evidence that Defendant seeks to suppress was discovered during the FBI agents' searches of the car.  Defendant maintains that such evidence should have been suppressed because it was seized in violation of his Fourth Amendment rights.  However, because Defendant was a passenger in the car, we must address the threshold issue of whether Defendant has standing to challenge the searches of the car.[8]

---

[6] The record indicates that approximately five FBI agents and two Utah Highway Patrolmen were present during the stop.

[7] The record also reveals that some firearm ammunition for a handgun was located in the vehicle during the August 28 search.

[8] The government raised this issue in its written response to the motion to suppress and during the suppression hearing.  The record, however, indicates that the court did not rule on Defendant's standing.  Because the record is not virtually barren of the facts necessary to decide the standing inquiry, we resolve this issue. See Combs v. United States, 408 U.S. 224, 227 (1972); United States v. Skowronski, 827 F.2d 1414, 1417 n.2 (10th Cir. 1987).

"Fourth Amendment rights are personal and may not be asserted vicariously." Skowronski, 827 F.2d at 1418 (citing Rakas v. Illinois, 439 U.S. 128, 133-34 (1978)). Suppression of evidence is an appropriate remedy only when the search violates a person's constitutional rights. "It is not enough that a person is aggrieved only by the introduction of damaging evidence derived from the search." Id. The proponent of a motion to suppress has "the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search." Id. at 1417.

In determining whether a search of an object has infringed upon a person's Fourth Amendment rights, the court must consider two factors: (1) whether the defendant has manifested a subjective expectation of privacy in the object of the challenged search, and (2) whether that expectation of privacy was objectively reasonable. See California v. Ciraolo, 476 U.S. 207, 211 (1986); United States v. Arango, 912 F.2d 441, 445 (10th Cir. 1990), cert. denied, 499 U.S. 924 (1991). In Rakas, 439 U.S. at 148-49, the Supreme Court held that a passenger who asserts neither a possessory nor a property interest in a vehicle would not normally have a legitimate expectation of privacy in the vehicle. Accord United States v. Eylicio-Montoya, 70 F.3d 1158, 1162 (10th Cir. 1995); United States v. Martinez, 983 F.2d 968, 973 (10th Cir. 1992), cert. denied, 507 U.S. 1056 and 508 U.S. 922 (1993); Arango, 912 F.3d at 445-46; United States v. Erwin, 875

F.2d 268, 271 (10th Cir. 1989). A passenger generally does not establish standing to contest the search of a vehicle merely because he was charged with a possessory crime. See United States v. Eylicio-Montoya, 18 F.3d 845, 850 (10th Cir. 1994). However, a defendant may establish a reasonable expectation of privacy by presenting evidence of some lawful control or possession of the vehicle. Id. at 851.

In this case, Defendant has not demonstrated that he had any legitimate possessory interest in or any lawful control over the car. The red Dodge Neon in which Defendant was traveling was owned by Enterprise Rent-A-Car and rented to Quintero Lazaro in Chandler, Arizona. Neither Defendant nor the driver was named as a renter or authorized driver in the rental car agreement. See United States v. Obregon, 748 F.2d 1371, 1374-75 (10th Cir. 1984). Further, Defendant does not assert, either at the suppression hearing or on appeal, any privacy interest in the vehicle or in the contents of the car. See Eylicio-Montoya, 70 F.3d at 1162; Martinez, 983 F.2d at 973-74; Skowronski, 827 F.2d at 1418. Defendant has not presented any evidence sufficient to meet his burden of proving that the challenged search of the vehicle and the subsequent seizure of cocaine violated his Fourth Amendment rights. We conclude that Defendant does not have standing to challenge the searches of the Dodge Neon. Therefore, we do not examine the constitutionality of the warrantless searches of the vehicle.

Although Defendant cannot challenge the search of the vehicle, he can contest the constitutionality of his own search and seizure. See Eylicio-Montoya, 70 F.3d at 1162-64. Defendant contends that we should grant the motion to suppress because the evidence seized was the "fruit" of four allegedly unlawful searches or seizures: the stop of the vehicle; the pat-down search of his person; his initial detention; and his arrest.

It is undisputed that "stopping an automobile and detaining its occupants constitute[s] a 'seizure' within the meaning of [the Fourth] Amendmen[t]." Delaware v. Prouse, 440 U.S. 648, 653 (1979). A warrantless seizure of an automobile and its occupants may be reasonable if predicated on probable cause and exigent circumstances. See id. at 654 & n.10; United States v. Swingler, 758 F.2d 477, 487-88 (10th Cir. 1985). Prior to the stop, the FBI obtained information from Informant Five and the cooperating witness concerning the transportation of cocaine in and out of Utah by Mr. Gama, his brother, and an associate in a specific vehicle with a known license plate number. The FBI investigated these events and visually corroborated other tips provided by Informant Five and the confidential informant. The FBI identified the red Dodge Neon with Arizona plates at the precise location indicated by Informant Five. The FBI observed the same Dodge Neon depart that location, follow a van to Interstate 15, and head south toward Las Vegas on the Interstate. These

observations confirmed the reliability of the informants' reports. Further, judging the credibility of the witnesses, determining the weight to be afforded the testimony, and drawing reasonable inferences and conclusions from the testimony are within the province of the district court. See Toro-Pelaez, 107 F.3d at 824. Despite Defendant's argument that the FBI agents' testimony and reports were inconsistent with a Utah Highway Patrol video, the district court did not err in implicitly determining that the FBI agents' testimony was credible. See id. at 825. Based on the totality of the circumstances, we conclude that the FBI had probable cause to suspect that contraband was present in the vehicle. Therefore, the vehicle contained the instrumentality of a crime sufficient to justify a stop.[9]

Defendant also contends that the pat-down search and his initial detention were unreasonable and tainted the evidence seized as a result of the pat-down and during the search of the vehicle. A pat-down protective search or seizure is permissible if the police reasonably believe that a suspect is presently armed and dangerous. See Adams v. Williams, 407 U.S. 143, 146 (1972); Terry, 392 U.S. at

---

[9] We note that the stop in this case is also justified by the lower standard of reasonable suspicion. A stop of a vehicle may be constitutional without probable cause if the officers had a reasonable suspicion, grounded in specific and articulable facts, that the suspect has committed, is committing, or is about to commit a crime. See United States v. Hensley, 469 U.S. 221, 226-27, 234 (1985); Terry v. Ohio, 392 U.S. 1, 21 & n.18 (1968). The facts in the record substantiate the officers' reasonable suspicion of wrongdoing sufficient to justify an investigative stop. See Arango, 912 F.2d at 446-47.

27; United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993). Police officers are authorized to take reasonable steps necessary to secure their safety and maintain the status quo during a stop. See Perdue, 8 F.3d at 1462. However, the use of firearms, handcuffs, and other forceful techniques are justified only by probable cause or when "the circumstances reasonably warrant such measures." Id. at 1462-63; Shareef, 100 F.3d at 1502-04.

The Utah Highway Patrol and FBI agents conducted a felony stop in response to information from Informant Five that at least one of the occupants of the red Dodge Neon may have been armed. The FBI agents had no reason to disbelieve information provided by an informant whose previous tips were generally reliable and corroborated. Further, the agents "need not be absolutely certain that the individual is armed" before taking protective measures. Terry, 392 U.S. at 27. Although no firearm was ever found on the occupants of the vehicle,[10] the officers were justified in utilizing measures to protect themselves and the public. The felony stop procedures were predicated on a combination of the reasonable belief that the occupants of the vehicle may be armed, the probable cause to believe that the occupants were transporting cocaine,

_____

[10] We note that the validity of a pat-down search does not depend on the officers' finding a weapon. Cf. Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) (stating "mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest").

and the fact that the stop was executed on an automobile, during the night, on the side of a highway. Compare Terry, 392 U.S. at 27-30 (holding that officer's belief that men were armed and acting suspiciously was reasonable), and Shareef, 100 F.3d at 1502-06 (concluding that forceful precautionary measures were reasonable), and Perdue, 8 F.3d at 1463 (determining that officers were justified in displaying some force), with United States v. Melendez-Garcia, 28 F.3d 1046, 1051-53 (10th Cir. 1994) (holding that felony stop procedures were not reasonable where officers had no information that occupants were armed and stop was executed in daylight). We conclude that the pat-down search and the initial detention of Defendant were reasonable and did not impair his Fourth Amendment rights.

Finally, Defendant's warrantless arrest was constitutional if, at the moment the arrest was made, the FBI agents had probable cause to arrest. Probable cause to arrest depends "upon whether, at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964); see Swingler, 758 F.2d at 486-87. We review the record to determine if the arrest in this case was justified under the requisite constitutional standard.

-13-

The record indicates that although the FBI agents did not find a gun on Defendant or in the vehicle, they verified virtually all other information given to the agents by Informant Five and the cooperating witness. The facts in the record that we have previously described gave the FBI agents reasonably trustworthy information sufficient to warrant a prudent person in believing that the occupants of the red Dodge Neon were committing an offense. See Swingler, 758 F.2d at 488-89; see also Carroll v. United States, 267 U.S. 132, 156-62 (1925) (holding warrantless arrest was justified by reasonable or probable cause to believe that occupants of car were illegally transporting contraband). Further, once the FBI discovered approximately one-half to one kilogram of cocaine in the trunk of the red Dodge Neon, cocaine residue in a plastic bag in the vehicle's glove-box, and a small amount of cocaine that apparently fell out of Defendant's pocket, abundant probable cause existed to arrest Defendant. See Adams, 407 U.S. at 148; Eylicio-Montoya, 18 F.3d at 849; Swingler, 758 F.2d at 487-88.

Because our review of the record discloses no reversible error in the district court's denial of Defendant's motion to suppress, we AFFIRM Defendant's conviction.

## II.

Defendant also challenges the legality of his sentence, alleging that the

-14-

district court erroneously refused to apply section 5C1.2 of the sentencing guidelines. He argues that he should have received a lesser sentence[11] allowed under 18 U.S.C. § 3553(f) and the corresponding guideline section 5C1.2 for "relatively less culpable offenders." United States v. Acosta-Olivas, 71 F.3d 375, 379 (10th Cir. 1995).[12] We review de novo the district court's interpretation of the sentencing guidelines, and we review the court's factual findings for clear error. See Verners, 103 F.3d at 110.

Section 5C1.2 provides that a court shall impose a guideline sentence, instead of the mandatory minimum sentence prescribed by statute, if the court finds at sentencing that:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;

---

[11] Defendant was sentenced to a mandatory minimum 60-months imprisonment. If the statutory minimum sentence did not apply, he would be subject to a sentence of 46 to 57 months. R., Vol. VII at 10.

[12] Defendant also asserts that he was entitled to a lesser sentence for mitigating circumstances pursuant to 18 U.S.C. § 3553(b). Because Defendant does not tell us what mitigating circumstance exists, we do not address this claim. Cf. United States v. Verners, 103 F.3d 108, 111 (10th Cir. 1996) (confirming that a "district court has no discretion to depart from a statutory minimum sentence for section 3553(b) mitigating circumstances").

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2.; 18 U.S.C. § 3553(f). Defendant bears the burden of proving the applicability of this section. Verners, 103 F.3d at 110.

We are primarily concerned with the court's treatment of subsection 5, which requires Defendant to truthfully disclose to the government all information relevant to his offense. See Acosta-Olivas, 71 F.3d at 379. The question before us is whether the court made a finding that Defendant did not meet the requirements of section 5C1.2(5) because he had not truthfully provided to the government all information relating to his offense, or whether the court determined that its role was not to evaluate the truthfulness and completeness of the information provided by Defendant and therefore it did not apply section 5C1.2.

At sentencing, the district court made several statements concerning section 5C1.2. The court stated that it "is not in the information gathering business in the

sense in which it's used in Subsection 5 of the applicable guideline." R., Vol. VII at 16. The court then determined that in consideration of the totality of the circumstances, including "the professed contest by the United States and the last minute effort to furnish information indirectly to the United States," the court was "not well equipped with all the information furnished to make a finding under Subsection 5." Id. The court also stated that "[b]ecause of the nature of the information [and] the inability of the Court to make such a finding, [the court will] have to find Subsection 5 was not met." Id. In response to defense counsel's question whether the court intended to make a finding that Defendant has not complied with subsection 5, the court responded, "No. . . . I made a finding the information that you have furnished me is insufficient to justify an affirmative finding. It's a question of evidence as to the completeness and as to the truthfulness." Id. at 18.

Based on our review of the record, we conclude that the court misunderstood its role in determining the applicability of section 5C1.2. The court essentially stated that it would not find that Defendant did not comply with subsection 5. Because the court was not in the business of evaluating the information provided by Defendant, it could not determine whether Defendant had satisfied subsection 5. Section 5C1.2, however, requires that "the court determine[] whether a defendant has complied with its provisions, including

subsection 5." Acosta-Olivas, 71 F.3d at 379. In order to assess whether a defendant has satisfied subsection 5, a court must determine the quality and completeness of all information furnished to the government by Defendant. See United States v. White, 119 F.3d 70, 72-74 (1st Cir. 1997) (noting that district court properly made specific and detailed findings as to the truthfulness of information and defendant's eligibility under section 5C1.2). It is precisely because the record in this case contains contested evidence about the truthfulness and completeness of the information provided by Defendant to the government that the district court is better equipped than we are to make the requisite findings.[13] See Fed. R. Crim. P. 32(c)(1); Acosta-Olivas, 71 F.3d at 379-80; United States v. Rodriguez, 69 F.3d 136, 143-44 (7th Cir. 1995). We conclude that the court's failure to evaluate and make sufficient findings on the information provided by Defendant in relation to subsection 5 was erroneous. After Defendant claimed that he had satisfied the requirements of section 5C1.2, the court failed to properly analyze whether Defendant was eligible for such relief.

Additionally, while the court stated that it was unable to make a finding under section 5C1.2, it seemed to find that Defendant had not satisfied the criteria

_____

[13] The record shows that Defendant contends he truthfully provided all relevant information to the government in his written plea agreement, at his change of plea hearing, in his testimony at his co-defendants' trial, and in the Judge's chambers prior to the sentencing hearing. The government insists that much of the information provided by Defendant was false or incomplete.

of section 5C1.2 because some of the information provided by Defendant was "in a last ditch effort" before sentencing.[14]  This finding is clearly erroneous.  Section 5C1.2(5) requires a defendant to provide truthful information to the government "not later than the time of the sentencing hearing."  A defendant, therefore, may present information relating to subsection 5 to the government before the sentencing hearing.  See United States v. Ortiz, 136 F.3d 882, 884 (2d Cir. 1997), cert. denied, ___U.S.___, 118 S. Ct. 1104 (1998); United States v. Ramirez, 94 F.3d 1095, 1100 (7th Cir. 1996); United States v. Real-Hernandez, 90 F.3d 356, 361 (9th Cir. 1996); United States v. Romo, 81 F.3d 84, 86 (8th Cir. 1996).  We believe that Defendant's attempt to furnish information to the court and the government in the Judge's chambers prior to the sentencing hearing is not "too late."  R., Vol. VII at 6.  Whether this information is truthful and, in combination with the other information that Defendant professes is truthful and complete, satisfies subsection 5 is a factual finding for the district court.

We therefore REMAND to the district court with instructions to vacate the sentence and resentence Defendant in accordance with this opinion and the record evidence.  The district court is directed to evaluate the information presented by Defendant and the government's recommendation to determine whether Defendant

---

[14] Because Defendant's proffer technically occurred before the sentencing hearing began, we do not address whether a proffer of information occurring "at" or "during" a sentencing hearing is timely under section 5C1.2(5).

-19-

satisfied the requirements of section 5C1.2, and subsection 5 in particular.[15]

**AFFIRMED** in part and **REMANDED** for resentencing.

---

[15] The record indicates that the government and Defendant agree that the first and third criteria were satisfied. See R., Vol. VII at 12-14. The record also reveals a statement by the court negating the relevance of a government argument that the fourth criteria was not satisfied. See R., Vol. VII at 12-13. The court did not discuss the second requirement. Obviously, our directions do not preclude the court from making any other findings it deems appropriate.