**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 1 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

      v.

DAVID CAMPOS-CAMPOS,

      Defendant-Appellant.

No. 99-8015

District of Wyoming

(D.C. NO. 97-CR-125-B)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **MCKAY**, and **HENRY**, Circuit Judges.

---

On November 20, 1997, David Campos-Campos was indicted by a federal grand jury in Cheyenne, Wyoming. He was charged with possession of marijuana with intent to distribute and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2 (count 1), possession of cocaine with intent to distribute and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (count 2), and illegal re-entry of a deported alien in

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

violation of 8 U.S.C. § 1326(a) (count 3). After the district court denied his motion to suppress physical evidence, Mr. Campos-Campos entered conditional pleas of guilty to all counts, preserving his right to appeal the denial of his suppression motion.

On appeal, Mr. Campos-Campos argues that he did not consent to the automobile search and that the district court erred by denying his motion to suppress evidence found during that search. Because we agree with the district court's determination that Mr. Campos-Campos consented to the search of the entire vehicle, we affirm the denial of his motion to suppress.

I.    BACKGROUND

Mr. Campos-Campos and co-defendant Ricardo Mendoza were traveling east on I-80 near Laramie, Wyoming, when they were spotted by Wyoming Highway Patrol Officer David Chatfield. Due to the make of their vehicle—a Crown Victoria with a large trunk and tinted windows—and its California license plates, Officer Chatfield decided to follow and observe Mr. Campos-Campos and Mr. Mendoza. His radar indicated the vehicle was traveling ninety-one miles per hour, so Officer Chatfield pursued and stopped it at 10:51 a.m.

Officer Chatfield approached the driver's side of the car and explained he stopped the vehicle for speeding. The driver, Mr. Campos-Campos, spoke in

Spanish to Mr. Mendoza, who informed Officer Chatfield that Mr. Campos-Campos did not speak English.

Through translation, Officer Chatfield requested and received the driver's license and registration for the automobile. The address on Mr. Campos-Campos' driver's license matched that on the vehicle registration, but he claimed he was too nervous to recall the owner's name. Officer Chatfield requested identification from the passenger, then returned to his patrol car with the documents.

While awaiting an NCIC and license plate checks, Officer Chatfield requested the assistance of Officer Dyer, fluent in Spanish. Primarily due to Mr. Campos-Campos' nervousness, Officer Chatfield suspected drug trafficking, so he also requested a canine unit. Because the NCIC report came back negative and the license plate check revealed that the vehicle had not been reported stolen, Officer Chatfield prepared the traffic citation.

After the canine unit arrived approximately ten minutes later, Officer Chatfield approached the driver's side of the vehicle. When he arrived, Mr. Campos-Campos accurately volunteered the name of the owner and admitted that he understood some English. Officer Chatfield delivered a copy of the citation, an envelope, and a court slip, then explained the items in English. He then asked Mr. Campos-Campos, in English, if he understood what he had been told. Mr. Campos-Campos responded affirmatively.

Officer Chatfield then stated, "Okay. You're good to go." Rec. vol. II, at 28. He asked if Mr. Campos-Campos had any questions. Mr. Campos-Campos replied, "No." Id. When asked, Mr. Campos-Campos expressed a willingness to answer additional questions. The patrolman then asked whether the occupants of the vehicle possessed any drugs or large sums of money. Mr. Campos-Campos answered, "No." Id. at 29. Officer Chatfield then inquired, "Do you mind if I search your car for drugs and money?" Id. Mr. Campos-Campos did not object and "popped the trunk with the button." Id. The exchange was recorded by Officer Chatfield , and the District Court found "that the officers went out of their way to insure [sic] that miscommunication did not occur and that consent was freely given." Rec. vol. I, doc. 44, at 5 (Order Denying Defendants' Motion to Suppress) [hereinafter Order].

The dog failed to alert and Officer Chatfield found no drugs in the trunk. At the same time, Officer Dyer asked, in English and from the passenger side, if he could look in the backseat. Mr. Mendoza "turned around to his right and over his right shoulder unlocked the back door on the right side," but said nothing. Rec. vol. II, at 85. Mr. Campos-Campos gave no reaction to Officer Dyer's question. See id. at 97. Officer Dyer entered the back seat area, tugged at the back seat, and saw packages of contraband.

The arrest took place at 11:59 a.m.  A later search of the automobile revealed approximately twelve bricks of marijuana behind the seat, as well as four bricks of cocaine and one brick of marijuana in the spare tire.

## II.    DISCUSSION

Mr. Campos-Campos claims that the search went beyond the scope of his consent.  He further contends that the search of the interior of the vehicle was illegal, because the passenger, Mr. Mendoza, lacked authority to consent when he unlocked the rear door to give access.

The government contends that Mr. Campos-Campos lacked standing to challenge the search, because he failed to establish a possessory right in the vehicle or the drugs found therein.  Even if he did have standing, the government contends that Mr. Campos-Campos consented to the search and made no effort to object or stop Mr. Mendoza from unlocking the door.  Because standing is a threshold issue, we address it before the merits of the appeal.

**A.    Did Mr. Campos-Campos establish the necessary possessory interest and expectation of privacy to challenge the search?**

In the district court the United States argued Mr. Campos-Campos lacked standing to challenge the search, because he was not the owner of the vehicle. The district court did not directly address standing in its written order, implicitly finding standing to exist. When there is no dispute concerning the relevant facts, we review issue of standing de novo. See United States v. Rascon, 922 F.2d 584, 586 (10th Cir. 1990).

In support of its argument that Mr. Campos-Campos failed to establish the necessary possessory interest and reasonable expectation of privacy for standing to challenge the search, the United States relies on United States v. Betancur, 24 F.3d 73, 76 (10th Cir. 1994), United States v. Rubio-Rivera, 917 F.2d 1271, 1275 (10th Cir. 1990), Rascon, 922 F.2d at 586, United States v. Arango, 912 F.2d 441, 445 (10th Cir. 1990), and United States v. Erickson, 732 F.2d 788, 790 (10th Cir. 1984). In each of those cases, the police officer inquired as to the defendant's possession of the automobile. Where, upon inquiry, the defendant failed to establish any connection to the owner or a person with authority to grant possession, we found no standing. Where the defendant established a slight connection to the owner, we found standing to exist.

For example, in United States v. Soto, 988 F.2d 1548, 1553 (10th Cir. 1993), the defendant stated that he borrowed the automobile from his uncle, the registration matched his uncle's name, and a computer check revealed that it had

not been reported stolen. We held that those facts conferred standing to the defendant. See id. Here, Mr. Campos-Campos accurately volunteered the owner's name, the address on his driver's license matched that on the registration, and a computer check revealed that the automobile had not been reported stolen. Apparently satisfied with Mr. Campos-Campos' possessory right, Officer Chatfield returned the license and registration without inquiring further. Consequently, he sought consent to search the vehicle. Given these facts, we hold that Mr. Campos-Campos established a sufficiently valid possessory interest in the automobile and reasonable expectation of privacy to challenge the search.

**B.    Did Mr. Campos-Campos consent to the search of the interior of the automobile?**

Mr. Campos-Campos claims that while he may have consented to the search of the trunk, he did not consent to the search of the automobile interior. The District Court determined that the act of opening the trunk in response to a request to search the trunk and car manifested his consent to search the entire vehicle: "consent to the search was freely and voluntarily given." Order at 4. The District Court further found that Mr. Campos-Campos "acquiesced through his silence" to the request to search the back seat. Id. at 5. In so holding, the District Court noted "interviews with both Defendants following their arrest

revealed that they had understood the search requests and had freely consented."

Id.

When we review an order denying a motion to suppress, we consider the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous. See United States v. Gama-Bastidas, 142 F.3d 1233, 1237 (10th Cir. 1998). We conclude that the District Court did not commit clear error.

"It is clear that the scope of a consent search is limited by the breadth of the consent given." United States v. Pena, 920 F.2d 1509, 1514 (10th Cir. 1990), cert. denied, 501 U.S. 1207 (1991). In evaluating the scope of a suspect's consent, we apply an "objective reasonableness" standard: "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" United States v. McRae, 81 F3d. 1528, 1537 (10th Cir. 1996) (quotations omitted). Considering the "totality of the circumstances" and viewing the evidence in the light most favorable to the government, we determine "[w]hether a search remains within the boundaries of the consent" given. Pena, 920 F.2d at 1514-15.

Mr. Campos-Campos claims that, due to the language barrier, there was "significant confusion," Aplt. Reply Br. at 4, but this assertion is without merit. The district court specifically found that the officers went out of their way to

ensure that no language barrier existed.  <u>See</u> Order at 5.  A review of the record reveals scant evidence to the contrary.  The officers asked if they could search the trunk and car for drugs or money.  Mr. Campos-Campos' response was to open the trunk.  Clearly, the act of opening the trunk manifested consent to search that part of the vehicle.  <u>See</u> <u>United States v. Gordon</u>, 173 F.3d 761, 766 (10th Cir. 1999) ("Non-verbal conduct, considered with other factors, can constitute voluntary consent to search.").

One may reasonably conclude that the act of opening the trunk also gave consent to search the interior of the vehicle, since that portion was included in the question.  <u>See</u> <u>id.</u>  Had Mr. Campos-Campos' consent not included the automobile interior, he was obliged to object when the search went too far.  <u>See</u> <u>id.</u> ("We consistently and repeatedly have held a defendant's failure to limit the scope of a general authorization to search, and failure to object when the search exceeds what he later claims was a more limited consent, is an indication the search was within the scope of consent."); <u>see also</u> <u>Pena</u>, 920 F.2d at 1514-15 (holding that where a suspect does not limit the scope of a search, and does not object when the search exceeds what he later claims was a more limited consent, an officer is justified in searching the entire vehicle); <u>McRae</u>, 81 F.3d at 1538; <u>United States v. Wacker</u>, 72 F.3d 1453, 1470 (10th Cir. 1995); <u>United States v. Espinosa</u>, 782 F.2d 888, 892 (10th Cir. 1986).

Mr. Campos-Campos rightly claims that because Mr. Mendoza lacked any common authority over the automobile, he could not consent to the search; therefore, the government can not rely on any consent given by Mr. Mendoza. See United States v. Matlock, 415 U.S. 164, 171 (1974). Nonetheless, the government relied on Mr. Campos-Campos' own consent, so Mr. Mendoza's authority is irrelevant.

Mr. Campos-Campos also claims that he did not have the opportunity to object to the search of the interior. According to his own brief, however, he made no response whatsoever and just stared straight ahead when Officer Dyer asked if he could search the backseat. See Aplt. Br. at 9. Had the request been beyond the scope of his consent, he would have assuredly reacted in some manner to the question or to Mr. Mendoza's act of unlocking the door. Perhaps if he had given some reaction or protestation, but Officer Dyer had jumped into the rear too soon to be stopped, the argument would have merit. That is not the case here.

Considering the totality of the circumstances, Mr. Campos-Campos consented to the search of the trunk, as well as the interior of the vehicle. He did not limit the scope of that consent. Thus, the District Court correctly denied his motion to suppress.

III.  CONCLUSION

-10-

In summary, we agree with the district court that Mr. Campos-Campos consented to the search of the entire vehicle. Accordingly, we AFFIRM the denial of the motion to suppress.

ENTERED FOR THE COURT


Robert H. Henry
Circuit Judge