**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOSE MERCEDES GAMIZ-MORGA,

      Defendant-Appellant.

No. 05-2023
(D.C. No. CR-04-66-03-BB)
(D. N.M. )

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **McKAY** and **HENRY**, Circuit Judges.

Defendant-Appellant Jose Mercedes Gamiz-Morga ("Gamiz") pled guilty to

one count of conspiring to distribute heroin. He was subject to a mandatory

minimum ten-year prison sentence. See 21 U.S.C. § 841(a), (b)(1)(A)(i). Gamiz

asserted, however, that he fell within the statutory safety valve to mandatory

sentencing, which would permit the district court to sentence Gamiz below the

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

mandatory minimum.  <u>See</u> 18 U.S.C. § 3553(f).[1]  To be eligible for the safety

_____

[1]        The safety-valve provision specifically provides that

[n]othwithstanding any other provision of law, in the case of an offense under . . . 21 U.S.C. 841, 844, 846 . . . , the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that –

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

(continued...)

valve, Gamiz had to meet five requirements. See id. The district court found, however, that Gamiz had failed to meet the fifth requirement: "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." Id. § 3553(f)(5). Because the district court's factual finding was not clearly erroneous, we AFFIRM Gamiz's sentence.

## I. FACTS[2]

Federal Drug Enforcement Agency ("DEA") agents followed Antonio Meza-Aguilar ("Meza") after he crossed the Mexican-American border at El Paso, Texas. Meza met Juan Carlos Morales-Garcia ("Morales") and the two took a bus to Belen, New Mexico. The agents contacted the two men in the Belen convenience store near where the bus had dropped them off. The agents discovered heroin in both men's shoes, as well as in an extra pair of shoes that Morales was carrying. The agents confiscated a total of 1.48 kilograms of heroin from Meza and Morales. The agents then arrested Meza and Morales.

---

[1](...continued)

18 U.S.C. § 3553(f).

[2]     The parties do not dispute the basic facts underlying Gamiz's conviction. These facts are taken from the Presentence Report ("PSR"). Gamiz did not object to the PSR's rendition of these facts.

Meza told the agents that he was to be picked up at the convenience store by a gray truck. Further, Meza and Morales were each to be paid $1,800 for transporting the heroin. Both Meza and Morales acknowledged having similarly delivered drugs on several occasions.

A gray truck, an Isuzu Rodeo, followed by a white Buick Regal, soon twice drove through the convenience store parking lot. Gamiz, a passenger in the Rodeo, called Meza's cell phone four times, while the driver of the Regal called Meza once. These callers informed Meza that they were in the parking lot waiting to pick him up. The agents contacted the occupants of both vehicles. When the agents searched the Rodeo, they found exactly $4,000 in the glove compartment.

The Government charged Gamiz with one count of conspiring to distribute heroin and one count of possessing heroin with the intention of distributing it. Gamiz pled guilty to the first count, conspiring to distribute more than one kilogram of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and § 846.[3] That conviction carried a ten-year statutory mandatory minimum

---

[3]  21 U.S.C. § 841(a)(1) makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." And § 841(b)(1)(A)(i) provides that, "[i]n the case of a violation of subsection (a) of this section involving . . . 1 kilogram or more of a mixture or substance containing a detectable amount of heroin . . . such person shall be sentenced to a

(continued...)

sentence.  See 21 U.S.C. § 841(b)(1)(A)(i).  However, the plea agreement

provided that "[p]ursuant to U.S.S.G. § 5C1.2, [Gamiz] may be eligible for the

safety valve provisions set forth at 18 U.S.C. § 3553(f).  If [Gamiz's] eligibility is

established, he would be entitled to a reduction of two (2) levels from his base

offense level as calculated under the sentencing guidelines."  The plea agreement

also indicated that

> [t]he United States reserves the right, pursuant to U.S.S.G. § 3B1.2, to assess whether [Gamiz] was a minor participant in the criminal activity underlying this agreement following his debriefing.  Should [Gamiz] give truthful information and evidence demonstrating he was a minor participant, the United States would consider [an additional] reduction of two (2) levels from the base offense level as calculated under the sentencing guidelines.

Faced with these possibilities, Gamiz met with the Government.  The

information he gave the Government during this debriefing indicated the

following: The night before he was arrested, Gamiz had met Jose Angel Sanchez

Ibarra in a bar.  Gamiz had also seen Ibarra the next morning, December 15, 2003.

In Gamiz's presence, Ibarra had telephoned Meza that morning, using a cell phone

with an Albuquerque number.  Gamiz had agreed with Ibarra to pick up two men

---

[3](...continued)
term of imprisonment which may not be less than 10 years or more than life . . . ."
21 U.S.C. § 846 further provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

at the convenience store and deliver them to a Wal-Mart parking lot, where Ibarra would be. For his trouble, Ibarra would pay Gamiz gas money. Gamiz denied knowing any of the other participants in this drug exchange, except for the driver of the Rodeo, a man named Burciaga. The $4,000 in the Rodeo was money Gamiz had saved up from work.

Agent Perry testified at Gamiz's sentencing proceeding that Gamiz's story did not add up. The Agents knew Ibarra, but he lives in Mexico and refuses to enter the United States because he believes there has been a warrant issued in the United States for his arrest. And there were no records that Ibarra had crossed the Mexican-American border during this time period. Further, although Gamiz testified that he had seen Ibarra call Meza using an Albuquerque cell phone number, Meza's phone records indicate he did not receive any telephone calls from American numbers on December 15. And, although Gamiz asserted he did not know any of the other participants in the drug exchange besides the driver of the Rodeo, the driver of the Regal, Mario Aispuro-Gamez, asserted he had known Gamiz for at least three months.

In addition, Agent Perry testified that there were no telephone calls from Ibarra to Gamiz on December 15. Agent Perry found it odd that, if Ibarra was running this operation, he never called Gamiz to find out why Gamiz never showed up with Meza, Morales and the heroin.

Further, Gamiz refused to explain to the agents why the Rodeo had twice driven in and out of the convenience store parking lot when it arrived to pick up Meza and Morales. Agent Perry, who was with Meza in the convenience store, testified that at the time that the Rodeo had driven in and out of the parking lot, Meza had received a telephone call indicating there was a suspicious white man in the parking lot. At this same time, Agent Himes was in the parking lot and saw Gamiz talking on a cell phone. Yet, Gamiz denied ever making the statement about the suspicious white man.

Agent Perry also testified that he believed that "the drugs were destined for [Gamiz]. I don't believe he was going to deliver them to anyone else. I believe he was going to pick them up and he was going to be the individual that was going to distribute them in Albuquerque."

In light of Agent Perry's testimony, the district court found that Gamiz did not "provide full and truthful information."

> I'm not at all convinced he's done that. The whole story about Mr. Ibarra Sanchez, frankly does not pass the smell test, as far as I'm concerned. There is no evidence Mr. Ibarra Sanchez was in the country, met him at the bar. There is certainly no evidence he was in contact with him. And it seems unlikely to me that Mr. Ibarra Sanchez, if indeed he was the head of this organization, provided $4,000 to someone he met at a bar the night before to pick up the couriers, and trusted that much in the way of narcotics to someone he doesn't know, and money to purchase those narcotics. So I'm going to deny the safety valve.

Gamiz appeals, challenging only the district court's finding that Gamiz failed to provide the Government with all the information he had about the drug transaction underlying Gamiz's conviction. Having jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we AFFIRM Gamiz's ten-year sentence.

## II. DISCUSSION

Gamiz bore the burden of proving, by a preponderance of the evidence, that he met all five requirements for the safety-valve provision. See United States v. Virgen-Chavarin, 350 F.3d 1122, 1129 (10th Cir. 2003). The district court's determination that Gamiz did not provide the Government with all the evidence that he had about the events underlying his conviction is a factual finding that this court will not overturn unless clearly erroneous. See id. at 1130. And that finding was not clearly erroneous in this case. The record fully supported the district court's finding that Gamiz had not truthfully represented his role in the offense. See United States v. Gonzalez-Montoya, 161 F.3d 643, 652 (10th Cir. 1998). Further, we note that "because the record in this case contains contested evidence about the truthfulness and completeness of the information provided by [Gamiz] to the government[,] the district court is better equipped than we are to make the requisite findings." United States v. Gama-Bastidas, 142 F.3d 1233, 1242 (10th Cir. 1998); see also Virgen-Chavarin, 350 F.3d at 1129. Therefore, we AFFIRM Gamiz's sentence.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge