[Cite as *State v. Williams*, 194 Ohio App.3d 431, 2011-Ohio-2397.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 95483

THE STATE OF OHIO,

APPELLEE,

v.

WILLIAMS,

APPELLANT.

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-533510

BEFORE:   S. Gallagher, J., Kilbane, A.J., and Jones, J.

RELEASED AND JOURNALIZED:   May 19, 2011

Richardson & Kucharski Co., L.P.A., and Jeffrey S. Richardson, for appellant.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Marc D. Bullard, Assistant Prosecuting Attorney, for appellee.

SEAN C. GALLAGHER, Judge.

{¶ 1}  Appellant, Anthony Williams, appeals his convictions in Cuyahoga County Common Pleas Court Case No. CR-533510 of one count of possession of cocaine and one count of possession of criminal tools.  Williams challenges the trial court's decision denying his motion to suppress the evidence of the drugs underlying the charges.  For the following reasons, we reverse the trial court's decision and remand for further proceedings consistent with this opinion.

{¶ 2}  On September 15, 2009, the Cuyahoga County Sheriff's Department obtained a search warrant for 3488 West 54th Street, Cleveland, Ohio ("target address").  To execute the warrant, the officers conducted a controlled delivery of a package containing marijuana to identify the intended recipient.  The search warrant authorized the search of only the target address.

{¶ 3}  After delivering the package, the officers secured the target address.  Two sheriffs, Detectives Timothy O'Connor and Tamika Agnew, with weapons drawn, moved up the next door neighbor's driveway to secure the gate of the backyard fence of the target address.  Williams was in the backyard of the neighboring house, 3484 West 54th Street, Cleveland, Ohio ("3484 address").  Upon seeing Williams, O'Connor

immediately ordered him to the ground to be handcuffed, claiming it was for officer safety. O'Connor continued to secure the target address while Agnew guarded Williams.

{¶ 4} While the other officers secured and executed the search warrant on the target address, Agnew noticed Williams fidgeting and attempting to get something from his pocket. Agnew then saw what she believed to be a plastic bag with crack cocaine protruding from Williams's pocket. Williams was arrested for possession. Agnew then searched Williams, finding $800 and two cell phones. Williams was never connected to the target address.

{¶ 5} Williams filed an unsuccessful motion to suppress the evidence of the drugs. The trial court found that the initial detention was lawful pursuant to the execution of the search warrant and that the discovery of the drugs fell under the plain-view doctrine. Williams pleaded no contest to both counts and timely appealed the trial court's denial of his motion to suppress.

{¶ 6} Williams's sole assignment of error is as follows: "The trial court erred to the prejudice of the defendant-appellant when it overruled his motion to suppress challenging the lawfulness of the police search and seizure of his person, in violation of his constitutional rights against unreasonable search and seizure as guaranteed by the fourth and fourteen [sic] amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution." We find merit to this assignment of error.

**{¶ 7}** Appellate review of a suppression ruling involves mixed questions of law and fact. See *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence. See *State v. Mills* (1992), 62 Ohio St.3d 357, 582 N.E.2d 972; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. An appellate court must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. *Burnside* at ¶ 8. The appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. Id.

**{¶ 8}** The Fourth Amendment does not prohibit all searches and seizures, only unreasonable ones. See the Fourth Amendment to the United States Constitution. In certain instances, a police officer may stop a person without probable cause for arrest if the officer has a reasonable and articulable suspicion that the person might be involved in criminal activity. *Terry v. Ohio* (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889. If the officer has such a suspicion and reasonably believes that the suspect might be armed, she may also conduct a protective frisk of the suspect's outer clothing for the officer's safety. Id. at 27.

**{¶ 9}** Through *Terry v. Ohio* and its progeny, the investigative detention has been extended, still based on the *Terry* standards, to protective sweeps of the surrounding area where an arrest is taking place, *Maryland v. Buie* (1990), 494 U.S. 325, 337, 110 S.Ct. 1093, 108 L.Ed.2d 276, and to detaining persons at the scene of an arrest who are not

within the immediately adjoining area of the arrest. *United States v. Maddox* (C.A.10, 2004), 388 F.3d 1356, 1362. Furthermore, a search warrant implicitly confers limited authority on police officers to conduct investigative detentions of persons reasonably connected to or found on the property subject to the warrant. *State v. Schultz* (1985), 23 Ohio App.3d 130, 136, 491 N.E.2d 735. While not defining "reasonably connected to the property," the court stated that a mere pedestrian would not be subject to a search "due to propinquity alone." Id.

{¶ 10} It is important to recognize that these exceptions to the Fourth Amendment are all subject to the officer having a reasonable and articulable suspicion that the person might be involved in criminal activity or poses a danger to the officers. There is no all-encompassing exception that any bystander, wherever found, can be detained in the execution of a search warrant.

{¶ 11} When determining whether an investigative stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus. An officer's inchoate hunch or suspicion will not justify an investigatory stop. For example, "[t]he reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely in determining whether an investigative stop is warranted." *Bobo* at 179. However, that fact alone is insufficient. The totality of the facts and circumstances before the officer must reasonably suggest that some specific criminal activity is afoot. Id. Courts

must give "due weight to the officer's trained eye and experience" in reviewing the totality of the circumstances. *State v. Andrews* (1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271.

{¶ 12} In the current case, the officers approached the target address to execute the search warrant from the neighboring house's driveway, the 3484 address. Williams was in the backyard of the 3484 address. The warrant authorized the officers to search only the target address. Before the officers could even ascertain whether Williams had any connection whatsoever to the target address, they had him on the ground and handcuffed, elevating the nature of the encounter beyond simply detaining Williams for officer safety. See *United States v. Gama-Bastidas* (C.A.10, 1998), 142 F.3d 1233, 1240 (acknowledging that "the use of firearms, handcuffs, and other forceful techniques are justified only by probable cause or when the circumstances reasonably warrant such measures").

{¶ 13} The officers had no information to connect Williams to the target address prior to the initial encounter. In fact, Williams was never connected to the target address. The officer who delivered the package did not indicate that Williams was the person who had signed for the package. Williams was not seen entering or leaving the target address, engaging in any conduct directed toward the target address, or attempting to warn the occupants of the target address. See *Schultz*, 23 Ohio App.3d at 135. Williams had the misfortune of being in the wrong place at the wrong time.

{¶ 14} Although William had no connection to the target address before the detention, the officers still could have conducted a *Terry* stop and detained Williams if they had any individualized suspicion of his being involved in criminal activity or believed that he posed a danger to the officers. *Terry*, 392 U.S. at 21-22. The state relies on *Maddox*, 388 F.3d 1356, for the proposition that officers may detain bystanders within the arrest area, including areas outside the home. Such reliance is misplaced. The overriding principle espoused by cases authorizing detentions of persons pursuant to the execution of warrants stems from *Terry* and the reasonable-and-articulable-suspicion standard.

{¶ 15} For example, in *Maddox*, the officer had a reasonable, articulable suspicion of potential danger in his encounter with the defendant, who appeared on the scene of an in-home arrest after the officers began executing the arrest warrant. The detaining officer was outnumbered by more than five-to-one; it was getting dark; and the officer observed the defendant reach under the seat of a car prior to exiting the vehicle and approaching the officer. Furthermore, the only reason for being at the remote location was to access the known drug house where the arrest warrant was being executed. More importantly, the officer initially detained the defendant without a drawn firearm or handcuffs.

{¶ 16} In this case, Williams made no furtive movements. He was compliant with all requests. The officers were not outnumbered and first encountered the unarmed Williams with their guns drawn. The officers did not see Williams until coming up the

driveway of the 3484 address, and they immediately ordered him to the ground. There was only one other person outside the target address, and that person was also on a neighboring property and subjected to the same treatment that Williams received. Detective Agnew was able to stay behind to watch Williams. It was not dark, and there is no evidence that Williams was in a dimly lit area.

{¶ 17} There was no prior basis to suggest that Williams posed any threat to the officers or was involved in any criminal activity, other than the fact that he was in close proximity to the officers closing in on the target address. Detective O'Connor's testimony that, based on his experience, Williams could have been a lookout for the target address and that executing warrants on drug houses is inherently risky, is insufficient, standing on its own, to establish an individualized, reasonable, articulable suspicion of criminal activity to support the initial detention. See *Bobo*, 37 Ohio St.3d at 179.

{¶ 18} We are cognizant that this case is as much about officer safety as it is about the Fourth Amendment. Police officers are exposed to dangerous situations when conducting searches of homes. Events often happen in a matter of seconds, and there is little time for reflection. The margin of error is often close, and errors carry deadly consequences. Nevertheless, police know they will likely encounter uninvolved citizens on adjacent properties when approaching targeted locations and should be prepared to deal with them. Asking citizens on an adjacent property to go indoors, or to stay indoors, or to leave the immediate vicinity of the search area are all less intrusive options. If the person then exhibits any behavior that warrants additional police intrusion, such

intrusion can be justified without violating the tenants of the Fourth Amendment. Officer safety must be a determination of what is both reasonable and acceptable to afford police the necessary protections to ensure both their personal safety and the safety of the public. Officer safety cannot justify what amounts to a custodial arrest where the bystander is in all cases handcuffed and required to lie on the ground.

{¶ 19} Here, Williams was a bystander found on another property. The officers' uncertainty and Williams's proximity to the target address were insufficient grounds to authorize the degree of detention Williams was subjected to in this case. Considering the facts and all rational inferences at play, we do not find that the circumstances warranted the intrusion made against Williams's right to be free of unreasonable searches and seizures. Again, we appreciate the risks involved in executing search warrants on suspected drug houses. This case turns on the degree of intrusion imposed on Williams. Officers are free to use their reasonable discretion in handling bystanders during the execution of a warrant, and there certainly are differing degrees of interaction between a person and the police that would balance both the police and public's interests. However, to subject persons on neighboring properties and bystanders to the same treatment afforded to the occupants of the target address without a warrant or any individualized suspicion of criminal activity goes beyond any available exception to the Fourth Amendment.

{¶ 20} Because the initial detention of Williams was unlawful, the plain-view doctrine is inapplicable. The drugs must be suppressed as "fruit of the poisonous tree."

Williams's sole assignment of error is sustained. The judgment of the trial court is reversed, and we remand this cause for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

KILBANE, A.J., and JONES, J., concur.