**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 5 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GAVIN E. ALLEN, a/k/a Gerald E. Allen, a/k/a Andrew Johnson,

Defendant - Appellant.

No. 99-3236

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D. Ct. No. 99-CR-10012)**

---

Timothy J. Henry, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on the briefs), Office of the Public Defender, Wichita, Kansas, for Appellant.

Mona Lee M. Furst, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with her on the brief), Office of the United States Attorney, Wichita, Kansas, for Appellee.

---

Before **TACHA** and **PORFILIO**, Circuit Judges, and **KANE**,[*] District Judge.

---

**TACHA**, Circuit Judge.

---

[*]The Honorable John L. Kane, Jr., Senior District Judge for the District of Colorado, sitting by designation.

Defendant Allen appeals his conviction in the United States District Court for the District of Kansas on three counts of possession of crack-cocaine with the intent to distribute and one count of carrying a firearm in connection with a drug trafficking charge. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Facts

On January 26, 1999, a five count indictment was returned against the Defendant, Gavin E. Allen. The indictment charged Mr. Allen with possession of crack-cocaine with the intent to distribute on April 16, 1998, August 16, 1998, and November 29, 1998, in violation of 21 U.S.C. § 841(a)(1); carrying a firearm in connection with the August 16, 1998, drug trafficking charge in violation of 18 U.S.C. § 924(c); and of being a felon in possession of a firearm in violation of 18 U.S.C. § 924(c).

### A. April 16 Arrest

On April 16, 1998, a Wichita, Kansas police dispatcher received an anonymous call that Gavin Allen, who was wanted on warrants from Sedgwick County Court, was living at 813 S. Water. The anonymous caller stated that Mr. Allen was a black male, approximately 6 feet 7 inches tall, weighing about 200 pounds, and driving a brown or maroon car. The dispatcher sent police officers Nagy and Moon to check the address 813 S. Water for Mr. Allen.

The officers arrived at the address and observed a car in the driveway matching the description given. The officers knocked at the front door and two black males stepped outside. One of the men—later determined to be the defendant—fit the description given by the dispatcher and was questioned by Officer Nagy. When the defendant was told that the officers were looking for a man named Gavin Allen, he told Officer Nagy that his name was Gerald Allen, not Gavin Allen. Officer Nagy then asked for identification from the defendant. The defendant replied that his identification was in his brother Gerald's car.

Due to the matching physical description, the presence of the described car in the driveway, and the fact that the defendant had stated that he was Gerald Allen but then referred to his brother Gerald in the third person, Officer Nagy concluded that the defendant was indeed Gavin Allen. Officer Nagy placed Mr. Allen under arrest and searched him, finding a pawn slip bearing Gavin Allen's name, 10.77 grams of crack-cocaine, and $194 in cash. At that point, the defendant admitted to being Gavin Allen.

## B. August 16 Incident

Around midnight on August 16, 1998, the Wichita emergency dispatch operator received a call from Lareasha Washington. Ms. Washington told dispatch that her boyfriend, Gavin Allen, was outside her apartment threatening her. Ms. Washington described Mr. Allen as being about six-and-a-half feet tall,

weighing 200 pounds, wearing a blue and white Adidas shirt, and driving an older maroon Pontiac Grand Am. She informed dispatch that Mr. Allen always carried a small black gun with him. Wichita police officer Real responded to the call.

Officer Real stopped a maroon Pontiac Grand Am as it was leaving the apartment complex. The driver—later determined to be the defendant—was a black male wearing a blue and white shirt. Upon questioning, the defendant informed Officer Real that his name was Gerald Allen. At that point, another officer, Officer Woodard, arrived on the scene. Due to the concern that the defendant was carrying a weapon, Officer Real asked the defendant to step out of the car. The defendant complied and Officer Real patted him down, finding no weapon. Officer Woodard then asked if there were any weapons in the car. The defendant said there were not, and he denied Officer Woodard permission to search the vehicle. Officer Woodard stated that he was going to look anyway and reached to open the car door. As Officer Woodard reached towards the door, the defendant fled the scene and both Officers Woodard and Real gave chase. After less that a minute, Officer Woodard broke off the chase and returned to secure the vehicle. He searched the car and found a loaded, black Jennings .22 caliber semi-automatic handgun under the driver's seat. In addition, Officer Woodard found 8.25 grams of crack cocaine. Officer Real then returned to the vehicle

having been unsuccessful in his attempts to catch the defendant.

## C. August 26 Arrest

On August 26, 1998, the defendant was again arrested pursuant to an arrest warrant. Mr. Allen had been seen inside the apartment of Yolanda Madison. Mr. Allen had been living there for nearly two weeks after moving out of Ms. Washington's apartment. Wichita police officers Tucker and Barrier were directed to the apartment by an individual who had seen the defendant inside. They identified themselves as police officers outside the door and called the defendant by name, asking him to open the door.

Looking through a window, Officer Tucker saw Mr. Allen look out the front door peep hole and walk toward the rear of the apartment. After fifteen minutes of knocking and requesting entrance, the officers asked the apartment manager to let them in with her master key. The lease allowed her to enter apartments without notice for emergency reasons. The manager complied with the officers' request. Upon searching the apartment, the officers discovered Mr. Allen lying on the floor of the bedroom covered with clothing and drawers and feigning sleep. Mr. Allen was placed under arrest and taken into custody. Officer Real then came to the police station and identified Mr. Allen as the man who had run from him and Officer Woodard ten days earlier.

**D. November 29 Arrest**

On November 29, 1998, Wichita police officer Hungria was working his regular beat on South Broadway at around 1:00 a.m. Officer Hungria observed that room number sixty-four of the County Inn had people coming and going and suspected drug activity. Officer Hungria obtained the room registration and discovered that it had been rented to Gavin Allen since November 23rd. Upon discovering that there was an outstanding warrant for Mr. Allen's arrest and calling in back-up, Officer Hungria went to the room and knocked on the door. After Mr. Allen answered the door, the officers saw marijuana in the room in plain view. At that point, the officers arrested several people, including Mr. Allen and Leonard Love.

Both Mr. Allen and Mr. Love were patted down for weapons and transported to the jail via Officer Hungria's squad car. Mr. Love was placed in the back driver's side seat and Mr. Allen in the back passenger's side seat. Both men were handcuffed behind their back. Prior to beginning his shift, Officer Hungria had checked the rear seat of his squad car to make certain that it was clean. Mr. Love and Mr. Allen were the first to ride in the rear seat since Officer Hungria began his shift.

Upon arrival at the jail, Officer Hungria observed Mr. Allen squirming and moving considerably in his seat. He got both men out of the car, each out of

their respective sides, and checked the back seat for contraband. Under the cushion upon which Mr. Allen had been sitting Officer Hungria found a wadded up brown plastic sack. Before Officer Hungria could look into the sack, Mr. Allen stated that it was not his and that he was not in possession of it. Officer Hungria then looked inside and found 2.83 grams of crack cocaine.

## E. Pre-trial Motions

On April 19, 1999, the defense made several motions in the district court. Mr. Allen moved: (1) to suppress the evidence seized on April 16, 1998, for alleged violations of the Fourth Amendment; (2) to suppress the evidence seized on August 16, 1998, for alleged violations of the Fourth Amendment; and (3) to quash his August 26th arrest and to suppress Officer Real's identification of Mr. Allen as a result of that arrest. The trial court denied all three motions.[1] On April 23, 1999, the government moved for a continuance of the trial date due to the unavailability of the case agent, Dennis Laughrey, who had suffered a heart attack on April 19, 1999, and would remain unavailable for six to eight weeks. Over the defendant's objection, and pursuant to 18 U.S.C. § 3161(h)(3)(A) & (8)(A), the district court granted the continuance and excluded the period of

---

[1]Mr. Allen also moved to dismiss both the count of possession with intent to distribute stemming from the November arrest and the count of being a felon in possession of a firearm. The district court granted the latter and denied the former. Neither of these rulings is being appealed.

delay resulting from the unavailability of Agent Laughrey from the seventy-day speedy trial computation.

## II. Discussion

Mr. Allen challenges on appeal the district court's denial of his three April 19th pre-trial motions and the district court's grant of the government's motion for a continuance beyond the seventy-day limit of the Speedy Trial Act. Additionally, Mr. Allen alleges that his conviction was not supported by sufficient evidence. He further challenges the admission at trial of the 911 tape of Lareasha Washington.

## A. Probable Cause to Arrest on April 16, 1998

Mr. Allen contends that the drugs and other items seized from his person on April 16, 1998, were the fruits of an illegal arrest and should therefore be suppressed. We review a district court's findings of historical fact under the clearly erroneous standard, viewing the evidence in the light most favorable to the prevailing party. United States v. Erving L., 147 F.3d 1240, 1242 (10th Cir. 1998); United States v. Springfield, 196 F.3d 1180, 1183 (10th Cir. 1999). We review the question of whether probable cause to arrest existed at the time of the arrest de novo. Springfield, 196 F.3d at 1183.

Probable cause to arrest exists when an officer, considering the totality of the circumstances before him, is led to a reasonable belief that an offense has

been or is being committed by the suspect. United States v. Dozal, 173 F.3d 787, 792 (10th Cir. 1999). On April 16, 1998, Officer Nagy had a warrant for the arrest of Gavin Allen. Mr. Allen does not contest the validity of the warrant, but maintains that, at the time of the arrest, the police officers did not have probable cause to believe that he was indeed Gavin Allen. He argues that his arrest was based merely on a "hunch" that turned out to be correct. At the time of Mr. Allen's arrest on April 16, 1998, Officer Nagy knew the following: (1) dispatch had received an anonymous tip that Gavin Allen was at the residence; (2) the tip had accurately described the vehicle that was found at the residence; (3) an individual meeting the physical description given by the anonymous tip was found present at the residence; (4) that individual identified himself as Gerald Allen; and (5) the individual calling himself Gerald Allen then indicated that his identification was in *his brother Gerald's* car.

Mr. Allen relies on the recent Supreme Court decision in Florida v. J.L., 120 S. Ct. 1375 (2000), for the proposition that Mr. Allen's arrest was without probable cause because it was precipitated by an anonymous tip. In J.L., the Court held that an "anonymous tip that a person is carrying a gun, without more" does not give rise to reasonable suspicion justifying a stop and frisk of that person. Id. at 1377. The facts in this case are distinguishable from the facts of J.L. In J.L., the Court invalidated the stop and frisk in large part because the

-9-

anonymous tip failed to give reliable information that a crime had been or was being committed. The Court stated that "[a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity." J.L., 120 S. Ct. at 1379. Here, identity is the only matter in question. Warrants for Gavin Allen's arrest had been issued, thus giving the officers probable cause to conclude that a crime had been committed. The tip concerned only the whereabouts and identity of Gavin Allen. For the limited purpose of establishing identity, the tip was sufficiently corroborated. The vehicle described by the tip was present at the location and an individual meeting the physical description given was present. Furthermore, the fact that the individual identified by the tip was indeed Gavin Allen was corroborated when that person identified himself as Gerald Allen, but later referred to the vehicle as his brother Gerald's car.

Viewing the evidence in the light most favorable to the government and considering the totality of the circumstances, we conclude that Officer Nagy could reasonably infer that the defendant was actually Gavin Allen and was simply using the name Gerald as a cover. Thus, we hold that Officer Nagy had probable cause to arrest Mr. Allen, and we affirm the district court's denial of

Mr. Allen's motion to suppress the evidence seized pursuant to the April 16, 1998 arrest.

**B. Reasonableness of Search on August 16, 1998**

Before reaching the merits of Mr. Allen's claims concerning the validity of the search of Mr. Allen's car on August 16, 1998, we must resolve the threshold question of whether Mr. Allen has standing to assert Fourth Amendment rights in the vehicle. The district court ruled, after hearing the evidence presented at the suppression hearing and being briefed on the question, that Mr. Allen did not have such standing. We review a district court's determination of standing de novo. United States v. Gama-Bastidas, 142 F.3d 1233, 1237 (10th Cir. 1998).

The Fourth Amendment right of privacy is a personal right. United States v. Nicholson, 144 F.3d 632, 636 (10th Cir. 1998). It cannot be vicariously asserted. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). Thus, "[t]he proper inquiry is whether [the challenged action] violated the Fourth Amendment rights of [the] criminal defendant making the challenge." United States v. Erwin, 875 F.2d 268, 270 (10th Cir. 1989). "The proponent of a motion to suppress has 'the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search.'" Gama-Bastidas, 142 F.3d at 1238 (quoting United States v. Skowronski, 827 F.2d 1414, 1417 (10th Cir. 1987)). Whether a defendant's own Fourth Amendment rights were violated by a

challenged search turns on the classic Fourth Amendment test: "whether the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as objectively reasonable." Erwin, 875 F.2d at 270. This court has held that, in order for a defendant to show such an expectation of privacy in an automobile, the defendant bears the burden at the suppression hearing to show a "legitimate possessory interest in or [a] lawful control over the car." Gama-Bastidas, 142 F.3d at 1239.

After reviewing the record, we find that Mr. Allen offered no such evidence at the suppression hearing. In determining whether a defendant has met his burden to show a reasonable expectation of privacy in an automobile, this court has considered important, though not determinative, the following criteria: (1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle. Gama-Bastidas, 142 F.3d at 1238-39; Erwin, 875 F.2d at 270-71. Furthermore, this court has found the mere fact of presence in the car, or even possession of the car keys, insufficient to meet the defendant's burden of proving standing. United States v. Arango, 912 F.2d 441, 444 (10th Cir. 1990) (holding that defendant's mere possession of the vehicle at the time of the search is not

-12-

sufficient to give him standing to object to the search); Erwin, 875 F.2d at 271 (holding that the defendant's possession of the car keys is not sufficient to give standing).

Here, Mr. Allen argues that the fact that the district court found that Mr. Allen was the person driving the car on the night in question is sufficient to prove standing. In light of our prior holdings, Mr. Allen's position is untenable. Mere presence is not sufficient to show a legitimate possessory interest or lawful control over a vehicle—particularly when the individual flees the scene after being stopped by law enforcement officers. The fact that Mr. Allen was later shown to have had a legitimate possessory interest in the vehicle is not relevant to the question of whether Mr. Allen met his burden at the suppression hearing. As the proponent of a motion to suppress, Mr. Allen had the burden of proving he lawfully possessed the vehicle in order to show that he had a reasonable expectation of privacy in the vehicle. Arango, 912 F.2d at 445-46.

Mr. Allen protests that, had he been presented with the duty to show standing before the hearing, he would have done so. This is not convincing. This court will not impose upon either the government or district courts the burden of informing defense counsel of his evidentiary burdens. We hold that Mr. Allen failed to meet his burden to show a legitimate possessory interest in or lawful control over the vehicle at the suppression hearing. Therefore, we affirm

the district court's denial of Mr. Allen's motion to suppress the evidence seized on August 16, 1998 on the ground that Mr. Allen had no standing to assert a Fourth Amendment interest in the vehicle. Because we hold that Mr. Allen does not have standing to challenge the search of the car, we do not examine the constitutionality of that search.

## C. Validity of August 26, 1998 Arrest and Subsequent Identification

Mr. Allen challenges the admissibility of Officer Real's identification of Mr. Allen shortly after Mr. Allen's arrest on August 26, 1998, on the grounds that the arrest was in violation of the Supreme Court's decision in Steagald v. United States, 451 U.S. 204 (1981). Again, we review alleged violations of the Fourth Amendment de novo. United States v. Gordon, 168 F.3d 1222, 1225 (10th Cir. 1999). We accept the district court's findings of fact unless they are clearly erroneous. United States v. Nielsen, 9 F.3d 1487, 1489 (10th Cir. 1993).

In Steagald, the Supreme Court held that, absent exigent circumstances or consent by one with authority, law enforcement officers may not enter the home of a third party to execute an arrest warrant on a defendant without a search warrant. Steagald, 451 U.S. at 216. The district court found that the arresting officers had consent from a person with the authority to grant such consent—the property manager—to enter Yolanda Madison's apartment on August 26th. "A district court's factual finding is clearly erroneous only 'if it is without factual

support in the record or if [this] court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made.'" United States v. Patron-Montano, 223 F.3d 1184, 1188 (10th Cir. 2000) (alteration in original) (quoting Manning v. United States, 146 F.3d 808, 812 (10th Cir.1998)).

After reviewing the record, we cannot say the district court's findings are clearly erroneous. In the district court, Mr. Allen never even argued that the property manager lacked authority to open the apartment or that her consent was involuntary. Because the search of the apartment was with valid consent, there was no violation of Steagald and the subsequent identification was admissible. Thus, we affirm the district court's denial of Mr. Allen's motion to quash his August 26, 1998 arrest and to suppress the subsequent identification of Mr. Allen by Officer Real.

**D.  Speedy Trial**

The Speedy Trial Act requires that a criminal defendant's trial commence within seventy days of his initial appearance or indictment, whichever comes later. 18 U.S.C. § 3161(c)(1). Under certain enumerated circumstances, the seventy-day limit tolls. 18 U.S.C. § 3161(h). In particular, § 3161(h)(3)(A) provides that the limit tolls during "delay resulting from the absence or unavailability of the defendant or an essential witness." Furthermore, § 3161(h)(8)(A) provides that the limit tolls during "[a]ny period of delay

-15-

resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."

The district court found that case agent Dennis Laughrey was an essential witness in the government's case against Mr. Allen. The district court further found that Agent Laughrey had suffered a heart attack, had undergone quadruple bypass surgery, and would be unavailable for six to eight weeks. Thus, pursuant to § 3161(h)(3)(A), the district court held that any delay due to the unavailability of Agent Laughrey would toll the seventy-day speedy trial limit. The district court further held, pursuant to § 3161(h)(8)(A), that a continuance in the trial date to accommodate such a delay was in the interests of justice and outweighed the interests of the public and the defendant in a speedy trial.

We review a district court's application of the legal standards of the Speedy Trial Act de novo, and the underlying factual findings for clear error. United States v. Spring, 80 F.3d 1450, 1456 (10th Cir. 1996). In order for a district court to grant an "ends-of-justice" continuance, it must consider certain factors set forth in § 3161(h)(8)(B) and it must state "its reasons for finding that the ends of justice served by the granting of such a continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C.

§ 3161(h)(8)(A). Furthermore, "the record must clearly establish that the district court considered the proper factors at the time such a continuance was granted." United States v. Hill, 197 F.3d 436, 441 (10th Cir. 1999).

The district court in this case did not set forth its reasons for finding that the ends of justice outweighed the best interests of the public and the defendant. Nor does the record clearly establish that the court considered the factors set forth in § 3161(h)(8)(B). Thus, the order is insufficient as an ends-of-justice continuance. However, we think that the district court's order cannot be properly characterized as an ends-of-justice continuance despite the court's purported reliance on § 3161(h)(8)(A). Rather, we hold that when granting a continuance as a result of an unavailable and essential witness, § 3161(h)(3)(A) provides ample independent statutory authority for excluding such periods of delay from the speedy trial calculation.

Faced with a similar order, the District of Columbia Circuit stated:

Here the district court did, in excluding the period of delay resulting from the continuance, purport to rely upon paragraph (h)(8) in addition to paragraph (h)(3). If a delay caused by an unavailable witness could be excluded under (h)(8) in computing the maximum time to trial, however, then (h)(3), which specifically governs that situation, would be completely redundant. In the absence of any indication that Congress intended such a counter-intuitive result, we therefore conclude that paragraph (h)(8) is not applicable to an "essential witness" delay.

United States v. McNeil, 911 F.2d 768, 773 (D.C. Cir. 1990). We are convinced by the reasoning of the McNeil court. Thus, "essential witness" delays granted

-17-

pursuant to § 3161(h)(3)(A), which we hold this to be, need not comply with the more stringent requirements of "ends-of-justice" continuances which are made pursuant to § 3161(h)(8)(A).

The parties do not contest the fact that Agent Laughrey was unavailable during his recovery period. Mr. Allen, however, argues that Agent Laughrey's testimony was not essential. The question of whether a particular witness is "essential" within the meaning of § 3161(h)(3)(A) is a quintessential question of fact. In this case, the district court's finding that Agent Laughrey was an essential and unavailable witness is not clearly erroneous. Agent Laughrey was the case agent and was to testify both to Mr. Allen's intent to distribute crack-cocaine and to whether Mr. Allen's weapon met the definition of a firearm. Therefore, we hold that Mr. Allen's speedy trial rights were not violated and the district court's grant of an essential witness delay was proper under § 3161(h)(3)(A).

## E. Sufficiency of the Evidence

In addition to the above challenges, Mr. Allen argues on appeal that the government did not introduce evidence sufficient to support his conviction for possession of crack-cocaine with the intent to distribute and carrying a firearm during the commission of a drug offense. "We review sufficiency of the evidence claims de novo, asking 'only whether, taking the evidence—both direct

and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find [Defendant] guilty beyond a reasonable doubt.'" Springfield, 196 F.3d at 1184 (quoting United States v. Jenkins, 175 F.3d 1208, 1215 (10th Cir. 1999)) (alteration in original). "We do not 'question the jury's credibility determinations or its conclusions about the weight of the evidence.'" Id. (quoting United States v. Lazcano-Villalobos, 175 F.3d 838, 843 (10th Cir. 1999)).

## 1. Intent to Distribute

To prove a charge of possession with the intent to distribute, the government must show that the defendant possessed the controlled substance; knew that he had it; and possessed it with the intent to distribute it. United States v. Jenkins, 175 F.3d 1208, 1215-16 (10th Cir. 1999). Facts that can go toward proving that a defendant possessed drugs with the intent to distribute include: (1) the amount of the drugs; (2) the way they are packaged; (3) the presence of cash; and (4) the presence of firearms. United States v. Wilson, 107 F.3d 774, 779 (10th Cir. 1997); United States v. Nicholson, 17 F.3d 1294, 1299 (10th Cir. 1994); United States v. Coslet, 987 F.2d 1493, 1495 (10th Cir. 1993).

In this case, the testimony of the arresting officers and Agent Laughrey showed that Mr. Allen possessed amounts of crack-cocaine consistent with

distribution. Furthermore, Mr. Allen attempted to portray himself as a user rather than a dealer. However, no paraphernalia for personal use was found on April 16, August 16, or November 29th. Viewing the evidence in the light most favorable to the government, the evidence presented supports a plausible inference that Mr. Allen possessed the drugs with the intent to distribute.

## 2. Constructive Possession

Mr. Allen further challenges the sufficiency of the evidence that he possessed any drugs at all on November 29, 1998. The drugs in question were discovered under the seat in the rear of the patrol car immediately after Mr. Allen exited the car. "'A person constructively possesses contraband when he or she knowingly holds ownership, dominion or control over the object and premises where it is found.'" Springfield, 196 F.3d at 1184 (quoting Lazcano-Villalobos, 175 F.3d at 843). The government must show a connection between the defendant and the drugs. Jenkins, 175 F.3d at 1216.

At trial, Officer Hungria testified that he had checked the seat before his shift and found nothing. He further testified that after he arrested Mr. Allen and placed him into the back seat, he observed Mr. Allen moving around quite a bit. Finally, Officer Hungria testified that upon removing Mr. Allen from the patrol car at the jail, the drugs were found directly beneath Mr. Allen's seat. A sufficient nexus was established between Mr. Allen and the drugs such that a

reasonable inference could be made that Mr. Allen constructively possessed the drugs.

### 3. Proof of a Firearm

The evidence at trial showed that a loaded .22 caliber handgun was found under the seat of the driver's side seat of the car being driven by Mr. Allen on August 16, 1998. Mr. Allen does not challenge the sufficiency of this evidence, but rather challenges the government's evidence that what was found was actually a "firearm" as defined in 18 U.S.C. § 921(a)(3). Mr. Allen argues that, because Agent Laughrey only test fired the weapon with a blank, and testified as such at trial, there was no evidence that the weapon was capable of firing an actual projectile as required by statute. The argument is completely without merit. Agent Laughrey properly tested the weapon with a blank cartridge and subsequently testified at trial that the weapon was capable of firing a projectile. This evidence is sufficient.

### F. Admission of the 911 Tape

Finally, Mr. Allen challenges the district court's admission into evidence of the 911 call made by Lareasha Washington on August 16, 1998. We review the district court's evidentiary rulings for an abuse of discretion. United States v. Jones, 44 F.3d 860, 873 (10th Cir. 1995). The district court found the 911 tape admissible as both a present sense impression and an excited utterance. The

statements made by Ms. Washington were made at the time she saw Mr. Allen outside her door, trying to get in, and again upon his return after leaving once. In fact, Mr. Allen left while Ms. Washington was on the phone with the dispatcher. The evidence showed that Ms. Washington was distressed by Mr. Allen's presence at her apartment. The tape was admissible as both a present sense impression and an excited utterance, and its admission was not an abuse of discretion.

## III. Conclusion

For the foregoing reasons, the conviction of Gavin Allen on three counts of possession of crack-cocaine with the intent to distribute and one count of carrying a firearm in connection with a drug trafficking charge is AFFIRMED.