**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 4, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SHANNON MARIE WILD,

    Defendant-Appellant.

No. 04-6163
(Western District of Oklahoma)
(D.C. No. 03-CR-177-C)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **MURPHY**, and **McCONNELL**, Circuit Judges.

After examining the briefs and the appellate record, this panel has

determined unanimously to grant the parties' request for a decision on the briefs

without oral argument.  Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  This case is,

therefore, ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. INTRODUCTION

Defendant-appellant Shannon Marie Wild was charged with four counts of knowingly transporting a minor across state lines with the intent that the minor engage in prostitution, in violation of 18 U.S.C. § 2423(a), and one count of financially benefitting from a venture in which Wild recruited, enticed, and transported in interstate commerce a minor who was caused to engage in a commercial sex act, in violation of 18 U.S.C. § 1591(a)(2). The indictment alleged that on several different occasions Wild took minors from Oklahoma to Texas and had them engage in prostitution. A jury convicted Wild on all counts and the district court sentenced Wild to 121 months' imprisonment on each count, to be served concurrently, to be followed by three years' supervised release. On appeal, Wild argues that her conviction is not supported by sufficient evidence and that her sentence is invalid under *United States v. Booker*, 125 S. Ct. 738 (2005). Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court **affirms** Wild's convictions and sentences.

## II. BACKGROUND

Wild and the victims,[1] Jane Doe 1 (aged fourteen), Jane Doe 2 (aged sixteen), and Jane Doe 3 (aged fourteen), were from Shawnee, Oklahoma. Jane

---

[1]In order to protect the identity of the minor victims, this opinion will refer to them as Jane Does 1, 2, and 3.

Doe 1 initially met Wild through Wild's son. Thereafter, Jane Doe 1 introduced Wild to Jane Does 2 and 3. There was testimony that Wild provided the girls with alcohol and cigarettes and that Wild talked to the girls about prostitution prior to traveling to Texas. Wild, however, testified that she treated the girls as her own children and denied offering the girls alcohol or cigarettes, or discussing prostitution.

Jane Doe 2 first went to Dallas with Wild in Jane Doe 2's vehicle accompanied by three of Wild's children and two other young girls in early April 2003. Wild testified that the purpose of the trip was to locate her boyfriend and the father of her youngest child, Constantino "Junior" Gutierrez, and because Wild intended to relocate to Dallas. On the Friday of their arrival, Wild told Jane Doe 2 that unless she made some money, Jane Doe 2 would not be able to return to Oklahoma. Wild approached men and spoke to them in Spanish about how much the men would pay to have sex with Jane Doe 2. Although at first she resisted the idea, Jane Doe 2 eventually agreed and had sex with a man for money, giving the money she earned to Wild. Wild provided Jane Doe 2 with a condom and waited in the bathroom during Jane Doe 2's sexual encounter. At trial, Jane Doe 2 could not recall if she had sex with men on Saturday. The group returned to Oklahoma on Sunday.

In late April 2003, Jane Doe 3 went to Dallas with Jane Doe 2 and Wild. On the Saturday night of their stay in Dallas, Wild told Jane Doe 3 she needed to prostitute herself in order to make some money and Jane Doe 2 told Jane Doe 3 it was okay. Wild took Jane Does 2 and 3 to an apartment in which there were approximately five to seven men. Wild spoke to the men in Spanish and then told Jane Doe 3 to go into the bedroom with one of the men. Jane Doe 3 estimated that she had sex with three men that night. Jane Doe 2 testified she had sex with no more than four men. Jane Does 2 and 3 gave the money they received to Wild. The group left Dallas on Sunday and at some point Wild complained that Jane Doe 3 was "doing it wrong" because Jane Doe 3 took too long to have sex with the men. Wild also told Jane Doe 3 that if she told anyone about what happened in Dallas, she would kill her. Jane Doe 3 testified that she was scared and "didn't want to do it" but she "also wanted something to eat."

Jane Doe 1 first accompanied Wild, along with Jane Doe 2 and a woman named Darlene, to Dallas over Mother's Day weekend in 2003. When they ran out of money on Saturday night, Wild told Jane Does 1 and 2 to prostitute themselves. Apparently, the group would go to bars where Wild would talk to men and have them follow the girls to the motel or men would come to the apartment of Fred, a friend of Gutierrez's, and pick the girl they wanted. Wild gave the girls "a bunch of condoms," saying, "Use these. You get the money. As

soon as they bust or whatever, make them get off of you." The girls would get the money and give it to Wild.

In early June 2003, Jane Doe 1 returned to Dallas with Wild. After a few days in Dallas, Jane Doe 1 asked Wild when Jane Doe 1 would be returning home and Wild said, "You ain't going home." Initially, Jane Doe 1 stayed at Fred's apartment but eventually Wild made her find her own apartment. Jane Doe 1 was directed to pay for the apartment by prostituting herself. Oftentimes, Jane Doe 1 would walk up and down the street waiting for men whom Wild would call over. Wild would tell the men the price and Jane Doe 1 would give Wild the money she received, taking the men to either her apartment or Fred's apartment. Jane Doe 1 testified that some days she had has many as ten "dates." The money Jane Doe 1 earned from her "dates" was used to pay for the apartment, food, and cigarettes. Jane Doe 1 estimated she made at least a thousand dollars during her stay in Dallas. Jane Doe 1 testified that she was afraid of Wild and that Wild prevented her from leaving the apartment complex. At some point, Wild made Jane Doe 1 cut and dye her hair so she would not be recognized.

While in Dallas, Jane Doe 1 was able to call her mother and indicate that she was being held against her will. In turn, Jane Doe 1's mother called the police and on July 21, 2003, the Oklahoma City division of the FBI sought assistance from the FBI in Dallas in locating Jane Doe 1. The Dallas FBI agents

found Wild at an apartment complex in south Dallas. The agents questioned Wild who admitted knowing Jane Doe 1 but denied knowledge of Jane Doe 1's whereabouts. Agents returned the next day with Jane Doe 1's photograph and again Wild denied knowledge of Jane Doe 1's location. Wild's three-year-old daughter, however, alerted the agents to Jane Doe 1's presence at the apartment complex and the agents located Jane Doe 1. Wild told the agents she lied because "this was [her] first time in dealing with the FBI and [she] didn't want to get arrested." Jane Doe 1 was placed in the custody of the Dallas Police Department youth facility and subsequently returned home to Oklahoma.

On August 19, 2003, the government filed an indictment against Wild, charging her with four counts of knowingly transporting a minor across state lines with the intent that such minor engage in prostitution, in violation of 18 U.S.C. § 2423(a),[2] and one count of financially benefitting from a venture in which Wild recruited, enticed, and transported in interstate commerce a minor who was caused to engage in a commercial sex act, in violation of 18 U.S.C. § 1591(a)(2).[3] On January 14, 2003, a jury convicted Wild of all counts and, subsequently, the district court sentenced Wild to 121 months' imprisonment to be followed by

---

[2]The individual counts attached to the alleged violations of 18 U.S.C. § 2423(a) related to the trips to Dallas on April 4-6 (Count 1), April 25-27 (Count 2), May 9-11 (Count 3), and during June-July 2003 (Count 4).

[3]Count 5 involved the June-July 2003 trip to Dallas.

three years' supervised release.  Wild filed a timely notice of appeal and now challenges her convictions and sentences.

## III.   DISCUSSION

### A. Sufficiency of the Evidence

On appeal, Wild argues that her convictions must be reversed because the jury verdicts were based upon insufficient evidence.  Sufficiency of the evidence is a legal issue reviewed *de novo*.  *United States v. Lewis*, 240 F.3d 866, 870 (10th Cir. 2001).  The relevant question is "whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."  *United States v. Bush*, 405 F.3d 909, 919 (10th Cir. 2005) (quotation omitted).  In making this determination, "[w]e do not question the jury's credibility determinations or its conclusions about the weight of the evidence."  *United States v. Allen*, 235 F.3d 482, 492 (10th Cir. 2000) (quotations omitted).

The parties agree on the elements the government was required to prove to convict Wild of the crimes charged.[4]  To support a conviction for Counts 1-4, the government was required to show that (1) Wild transported the minor from

_____

[4]Wild does not contest the sufficiency of the evidence supporting the first and third elements of 18 U.S.C. § 2423(a) or the fourth element of 18 U.S.C. § 1591(a)(2).  Accordingly, this court will not address those elements.

Oklahoma to Texas, (2) Wild did so knowingly and with intent that the minor engage in prostitution, and (3) the minor was under the age of eighteen at the time. *See* 18 U.S.C. § 2423(a). Count 5 requires the government to prove that (1) Wild knowingly benefitted financially from participating in a venture, (2) the acts engaged in by the venture were in or affecting interstate commerce, (3) the venture recruited, enticed, harbored, transported, provided, or obtained by any means a person, (4) Wild knew that the person was under the age of eighteen, and (5) Wild knew the minor would be caused to engage in a commercial sex act. *See* 18 U.S.C. § 1591(a)(2).

Wild argues that she should not have been convicted for violating § 2423(a) because the evidence was insufficient to prove beyond a reasonable doubt that any prostitution occurred. Contrary to Wild's claim, the evidence that prostitution occurred was substantial. All three girls testified at length about their experiences in Dallas and although Wild denied the allegations and contends the testimony was "simply incredulous," we do not second guess the jury's credibility determinations. *See Allen*, 235 F.3d at 492. Moreover, the testimony of the girls regarding what occurred in Dallas was generally consistent. Wild also suggests that any alleged prostitution that did occur was only an incidental purpose of Wild's travels and thus the evidence was insufficient to prove that she transported the minors knowingly and with the intent that the minors engage in prostitution.

The girls, however, testified that they feared Wild and that, on at least one occasion, Wild told one of the victims that if she told the police, Wild would kill her. Similarly, Jane Doe 1 testified that Wild concealed Jane Doe 1's identity by making her cut and dye her hair. There was also testimony that Wild discussed prostitution with the girls prior to traveling to Dallas and that four separate, yet substantially similar trips were made to Dallas. In sum, there was more than sufficient evidence from which the jury could conclude that prostitution was an "efficient and compelling purpose[]" of Wild's travels. *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997) (quotation omitted).

There was also more than sufficient evidence related to the contested elements of § 1591(a)(2). Jane Doe 1 testified that Wild took the money Jane Doe 1 was paid for sex, demonstrating that Wild financially profited from the venture. Wild herself testified that she transported Jane Doe 1 from Oklahoma to Texas on a Greyhound bus, establishing that the alleged acts affected interstate commerce. *See Meacham*, 115 F.3d at 1496. There was also evidence from which the jury could conclude that Wild coerced or enticed Jane Doe 1 to engage in commercial sex acts. Specifically, there was testimony that Jane Doe 1 feared Wild, that she was told by Wild that it was necessary to prostitute herself in order to earn enough money to live in Dallas, and that Wild facilitated the prostitution by soliciting men and actively concealing Jane Doe 1's identity.

Taken as a whole and viewed in the light most favorable to the government, the evidence was more than sufficient to support Wild's convictions for violations of 18 U.S.C. §§ 1591(a)(2) and 2423(a).

**B. Sentencing**

The district court sentenced Wild to 121 months' imprisonment to be followed by three years' supervised release. Based on Wild's final adjusted offense level of thirty-two and her criminal history category I status, the sentencing range recommended by the presentence investigation report ("PSR") under the United States Sentencing Guidelines ("U.S.S.G.") was 121 to 151 months' imprisonment.[5] This range included enhancements based on the following facts: (1) multiple victims; (2) the offense involved a commercial sex act and the use of physical force, fraud, or coercion; (3) obstruction of justice; (4) undue influence of a minor to engage in commercial sex; and (5) the offense involved victims who had attained the age of twelve years, but not the age of sixteen years.[6]

---

[5]Because Wild was sentenced under the 2003 edition of the United States Sentencing Guidelines ("U.S.S.G.") Manual, all Guidelines citations are to the 2003 edition.

[6]Wild's adjusted offense level was calculated by applying Chapter 3, Part D (multiple counts), *see* U.S.S.G. § 2G1.1(d)(1), such that each victim is treated as a separate count of conviction. Accordingly, the sentencing recommendation of the PSR was based on the greatest adjusted offense level increased by the level of units attached to each additional count. *Id.* § 3D1.4. The greatest adjusted offense level, twenty-seven, was produced by grouping together Count 4, a

During the pendency of Wild's appeal, the Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005).[7] In *Booker*, the Supreme Court held that the Sixth Amendment requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756. It is now clear that in applying the federal Sentencing Guidelines prior to *Booker*, the district court could commit constitutional error by "relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily" and non-constitutional error by applying the Guidelines in a mandatory, as opposed to

violation of 18 U.S.C. § 2423(a), and Count 5, a violation of 18 U.S.C. § 1591(a)(2), under U.S.S.G. § 3D1.2(c). Pursuant to U.S.S.G. § 3D1.3(a), the offense level of the counts grouped under § 3D1.2(c), is the offense level for the most serious of the counts. In this instance, both counts produced the same offense level. The final adjusted offense level was calculated as follows: the base offense level of nineteen, *id.* § 2G1.1, was increased by four levels pursuant to § 2G1.1(b)(1) because the offense involved a commercial sex act and the use of physical force, fraud, or coercion, two-levels under § 3C1.1 for obstruction of justice, and by an additional two-levels because the victim was fourteen years old at the time of the offense. This adjusted offense level was further increased by five levels under § 3D1.4 (multiple-count adjustment), producing a final adjusted offense level of thirty-two.

[7]Wild raised her argument under *Blakely v. Washington*, 124 S. Ct. 2531 (2004), for the first time in her opening brief on appeal. Subsequently, this court ordered the parties to file supplemental briefs addressing how *United States v. Booker*, 125 S. Ct. 738 (2005), relates to the issues raised in this appeal.

advisory, fashion.  *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731-32 (10th Cir. 2005) (en banc).

Because Wild raises her argument under *Booker* for the first time on appeal, we review her sentence for plain error.[8]  Fed. R. Crim. P. 52(b).  "This court has discretion to recognize plain error that was not raised in the district court when (1) there is an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Sierra-Castillo*, 405 F.3d 932, 941 (10th Cir. 2005).  Here, the district court committed constitutional *Booker* error that is plain by applying the Guidelines in a mandatory fashion to enhance Wild's sentence based on judge-found facts.  *See Gonzalez-Huerta*, 403 F.3d at 731.  Indeed, the government concedes that the first two prongs of the plain error test are met in this case.  Wild must nevertheless satisfy the third and fourth prongs of plain error review to be entitled to relief.  This court, however, need not decide whether a defendant can demonstrate that her substantial rights were affected, if the defendant cannot also show that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *United States v. Lawrence*,

---

[8]Wild's various objections regarding the factual findings of the district court and the sufficiency of the evidence, rather than an objection based on the Sixth Amendment or any other constitutional grounds, are not sufficient to preserve *Booker* error.  *See United States v. Yazzie*, 407 F.3d 1139, 1144 (10th Cir. 2005) (en banc).

405 F.3d 888, 906 (10th Cir. 2005). Although this standard is applied less rigidly in the case of constitutional *Booker* errors, it is not satisfied in this case. *See United States v. Lauder*, 409 F.3d 1254, 1268 (10th Cir. 2005).

Wild's sentence is within the national norm, as reflected by the Guidelines sentence imposed, and there is nothing in the record to suggest a lower sentence would be appropriate. *See Gonzalez-Huerta*, 403 F.3d at 738-39. The evidence supporting many of the factual findings made by the district court and used to enhance Wild's sentence was overwhelming. *See Lauder*, 409 F.3d at 1269. More specifically, the victims' extensive testimony regarding the events in Dallas amply support the conclusion that the offense involved a commercial sex act and the use of physical force, fraud, or coercion, and that Wild unduly influenced a minor to engage in commercial sex. In addition, Wild admitted the age of the victims. Finally, to find Wild guilty, the jury necessarily had to discredit Wild's testimony denying that prostitution occurred which suggests that the evidence of obstruction of justice was substantial. Indeed, the district court itself described Wild's explanation of the events in Texas as "ludicrous and completely not credible."

Another consideration is "[w]hether the district court would simply reimpose the same sentence on remand, or whether instead the sentence would likely change to a significant degree if the case were returned to the district court

-13-

for discretionary sentencing." *Lawrence*, 405 F.3d at 906 (quotation and alteration omitted). Here, the district court did not suggest that it was dissatisfied with Wild's sentence, stating that "[t]here are no circumstances apparent to me which would warrant a departure" and "given the severity of the sentence and [Wild's] relative lack of serious criminal history prior to this time, [] a sentence at the bottom of the guidelines range is sufficient to satisfy all the goals of sentencing." Although Wild's sentence is at the bottom of the Guidelines range, nothing in the district court's statements or the record indicate that the court would have imposed a lesser sentence had it realized it had the discretion to do so. *See United States v. Magallanez*, 408 F.3d 672, 686 (10th Cir. 2005). Because Wild cannot demonstrate that the district court's error seriously affects the fairness, integrity, or public reputation of the judicial proceedings, she is not entitled to relief.

## IV. CONCLUSION

For the aforementioned reasons, Wild's convictions and sentences are **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

-14-