**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALBERT WILHELM FROST,

Defendant - Appellant.

No. 08-5086

(N.D. Oklahoma)

(D.C. No. 07-CR-00113-HDC-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

Albert Wilhelm Frost appeals his conviction by a jury for possessing a

firearm and ammunition after a former felony conviction, in violation of 18

U.S.C. § 922(g)(1). He contends that the evidence was insufficient to support a

guilty verdict; and, that the court gave a constitutionally erroneous presumption

of innocence instruction. We affirm.

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## BACKGROUND

On May 31, 2007, officers of the Tulsa Police Department executed a search warrant on an apartment occupied by Mr. Frost and his common-law wife, Christine Frost. A sign in the front window depicted a gun, along with the words, "This place is protected by a Glock three days a week. Guess which three."

When officers entered the apartment, they found Mr. and Mrs. Frost and three other individuals in the front room. A person was asleep in another room.

In the bedroom where Mr. Frost admitted that he slept and kept his clothes, officers discovered the following: a drawer in the nightstand next to the bed contained a loaded .380 caliber (9mm short) semi-automatic pistol, a pellet gun, a wallet containing Mr. Frost's Oklahoma identification card, a $100 bill which an officer overheard Mr. Frost tell another occupant belonged to him, three cell phones, and an eyeglass case. Nothing in the drawer belonged to anyone else, including, specifically, Mrs. Frost. Mr. Frost's Social Security card was in a second wallet found in a dresser. There was a small, unlocked portable safe in the closet containing, among other things, a box of .40 caliber Smith & Wesson rounds, and 43 rounds of Winchester 9mm Luger ammunition.

Mr. Frost admitted to the officers that he knew there were guns in the apartment, but asserted that Mrs. Frost had brought the semi-automatic pistol to the apartment. Forensic examination of the pistol did not find either Mr. Frost's or Mrs. Frost's fingerprints or, for that matter, any prints at all except for one

non-matching latent print on the slide. The forensic examiner testified that the absence of retrievable prints on such a pistol is not unusual.

At trial, Christine Frost testified for the defense. She stated that she had not lived at the apartment for more than two months prior to the raid, but had spent the two days before the search there. She claimed ownership and responsibility for the pistol and the safe. She stated that she told officers at the time of the search that she had placed a gun belonging to her in the bedroom, along with ammunition in a safe in the closet, and explained that the pistol was given to her by an employer for personal protection. She testified further that she put the pistol in the nightstand a couple of hours before the police arrived, that she did not tell Mr. Frost she had done so, that she had just recently brought the safe in from her truck, that she put the ammunition (some purchased by her and some brought in a couple of weeks before by a man named Andy) in the safe, that the safe was locked, and that she had placed the pistol in the nightstand drawer in a black case. She also stated that Mr. Frost had spent the previous night and two days on a couch in the living room because he had a toothache, so he did not know about the pistol in his bedroom.

Mrs. Frost admitted to four prior felony convictions and to being a drug addict. On rebuttal, the government put on testimony which impeached certain of Mrs. Frost's statements on cross-examination. She admitted that none of the items found in the nightstand drawer along with the two guns belonged to her, and

insisted that the semi-automatic pistol found there by the police had been in a

black case when she put it in the drawer.

At the close of the trial, the district court, as part of its instructions to the

jury, gave the following instructions, in the order set out:

## PRESUMPTION OF INNOCENCE

The defendant in a criminal case is presumed at the outset to be innocent. This presumption exists in the defendant's favor and abides with the defendant for proper protection, at every stage of the trial, unless the defendant's guilt is established by the evidence beyond a reasonable doubt.

The law does not require the defendant to prove his innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if the government fails to do so you must find the defendant not guilty.

## INFERENCES AND PRESUMPTIONS DEFINED

An inference is a deduction or a conclusion which reason and common sense lead the Jury to draw from facts which have been proved.

A presumption is a conclusion which the law requires the Jury to make from particular facts in the absence of convincing evidence to the contrary, but, unless so outweighed the Jury is bound to find in accordance with the presumption.

Unless and until outweighed by evidence to the contrary, the law presumes that a person is innocent of crime or wrong and that the law has been obeyed.

## REASONABLE DOUBT

While the government's burden of proof is a strict or heavy burden, it is not necessary that the defendant's guilt be proved beyond all possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning a defendant's guilt.

A "reasonable doubt" is a real doubt, based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

R. Vol. 1, Doc. 41 at 4-6.

The defense objected to the "Inferences and Presumptions Defined" portion of those instructions on the ground that they suggested both guilt by a preponderance of the evidence, rather than beyond a reasonable doubt; and that the presumption of innocence does not stay intact throughout the trial and jury deliberations.

The jury returned a guilty verdict on the charge of illegally possessing a weapon and ammunition after a former conviction of a felony, in violation of 18 U.S.C. § 922(g)(1).

## DISCUSSION

### A. Sufficiency of the Evidence

Mr. Frost claims that the evidence at trial was insufficient to sustain a guilty verdict beyond a reasonable doubt. We review de novo the sufficiency of the evidence supporting a conviction. United States v. Bowen, 437 F.3d 1009, 1014 (10th Cir. 2006). We consider whether, "taking the evidence—both direct and circumstantial, together with reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find [Mr. Frost] guilty beyond a reasonable doubt." United States v. Allen, 235 F.3d

482, 492 (10th Cir. 2000) (internal quotations omitted); "We do not question the jury's credibility determinations or its conclusions about the weight of the evidence." Id. "The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.  Instead, the evidence only has to reasonably support the jury's finding of guilt beyond a reasonable doubt." United States v. Pulido-Jacobo, 377 F.3d 1124, 1129 (10th Cir. 2004) (internal quotation marks and citation omitted).

To prove a violation of § 922(g)(1), "the government must establish the following elements beyond a reasonable doubt:  (1) that the defendant was previously convicted of a felony; (2) that the defendant thereafter knowingly possessed a firearm or ammunition; and (3) that the possession was in or affecting interstate commerce." United States. v. Colonna, 360 F.3d 1169, 1178 (10th Cir. 2004).  Here, Mr. Frost has disputed only the second element—knowing possession.  "Possession" under § 922(g)(1) may be actual or constructive. See United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994).  "[C]onstructive possession exists where the defendant has the power to exercise control or dominion over the item." United States v. Lopez, 372 F.3d 1207, 1212 (10th Cir. 2004).  In most cases, "[d]ominion, control, and knowledge . . . may be inferred if a defendant had exclusive possession of the premises" where the object is found. Mills, 29 F.3d at 549.

However, in cases of joint occupancy, as in this case, the government "must present evidence to show some connection or nexus between the defendant and the firearm or other contraband." Id. Mere proximity is not enough. But "evidence of knowledge and access gives rise to a permissive inference of dominion and control," [and] "evidence of knowledge and access may be proved by direct evidence, or inferred from circumstantial evidence, so long as the circumstantial evidence includes something other than mere proximity[.]" United States v. Jameson, 478 F.3d 1204, 1209-10 (10th Cir. 2007).

In this case, the government could have established the "knowingly possessed" element of the charge by showing constructive possession of the weapon by Mr. Frost by evidence supporting at least a plausible inference that he had knowledge of and access to—thus dominion and control over—the pistol. Id. at 1210; United States v. Hien Van Tieu, 279 F.3d 917, 922 (10th Cir. 2002); see also Mills, 29 F.3d at 549-50.

Applying these standards, we conclude that the evidence was sufficient to permit the jury to find that Mr. Frost had knowledge of and access to—and thus dominion and control over—the pistol, and therefore at the very least constructively possessed it. See Jameson, 478 F.3d at 1210.

Mr. Frost's defense vigorously asserted at trial, by appropriate motions, and asserts again on appeal, that the evidence failed to establish beyond a reasonable

doubt a nexus between the pistol and Mr. Frost sufficient to show knowledge, dominion and control.

On appeal, Mr. Frost points to several factors: a large number of people in the house; lack of evidence that Mr. Frost put the pistol in the nightstand and evidence from Mrs. Frost that she did, and lack of evidence connecting the safe where the ammunition was found to Mr. Frost.

The jury, however, had before it evidence of Mr. Frost's actual knowledge, by his own admission, of guns on the premises. Further, it had evidence of the location of the pistol in question in Mr. Frost's bedroom, in his bedside nightstand, in a drawer where it was intermingled with items exclusively personal to Mr. Frost. Those items included, significantly, personal identification, and a sizeable sum of cash which Mr. Frost conceded belonged to him. Mrs. Frost admitted that none of the items in the drawer belonged to her. Clearly the location of the gun was connected, in a very personal way, to Mr. Frost, and he surely had access to and control over it. The only testimony directly pointing to an opposite conclusion was, as indicated above, given by Mrs. Frost. That testimony was in important respects inconsistent with other evidence (such as whether the pistol was in a black case and whether the safe was locked or unlocked), and internally inconsistent as well as significantly impeached. Of course, Mrs. Frost's credibility and the weight of the evidence presented, were solely within the province of the jury. Applying the standards set out above, we

conclude that the evidence was sufficient, beyond a reasonable doubt, to support

the conviction.


### B.    Jury Instructions

Over a defense objection the district court gave the following instruction:

> INFERENCES AND PRESUMPTIONS DEFINED
> An inference is a deduction or a conclusion which reason and common sense lead the Jury to draw from facts which have been proved.
> A presumption is a conclusion which the law requires the Jury to <u>make from particular facts in the absence of convincing evidence to the contrary, but, unless so outweighed the Jury is bound to find in accordance with the presumption</u>.
> <u>Unless and until outweighed by evidence to the contrary, the law presumes that a person is innocent of crime or wrong and that the law has been obeyed</u>.

R. Vol. 1, Doc. 41 at 6 (emphasis added).

Mr. Frost contends on appeal that this instruction upended two fundamental

pillars of the presumption of innocence, that

> [T]he presumption (1) remains with the accused throughout every stage of the trial, including, most importantly, the jury's deliberations, and (2) is extinguished only upon the jury's determination that guilt has been established beyond a reasonable doubt.

Id. (citing <u>Mahorney v. Wallman</u>, 917 F. 3d 469, 471, n.2 (10th Cir. 1990)).

In other words, he contends that the instruction allegedly depicted the

presumption of innocence as existing only until evidence of guilt outweighs the

presumption, even if that occurred during trial; and, that a mere preponderance of the evidence, rather than proof beyond a reasonable doubt, was sufficient.

He argues that the error is constitutional and structural, therefore incapable of correction by other, admittedly correct, instructions given by the court on the presumption of innocence and reasonable doubt. This is so, he contends, because the jury would have no way of knowing which instruction was correct. In support he cites the following language from the Supreme Court's discussion in Francis v. Franklin, 471 U.S. 307 (1985), regarding how contradictory instructions must be evaluated:

> Nothing in these specific sentences or in the charge as a whole makes clear to the jury that one of these contradictory instructions carries more weight than the other. Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict.

Appellant's Br. at 12.

Continuing, Mr. Frost states that "[t]he errant instruction should be treated [as] a structural error." Id. at 13 (citing Sullivan v. Louisiana, 508 U.S. 275, 281 (1993) (defective reasonable doubt instruction is structural error)). "Such error is automatically reversible without harmlessness analysis." Id. at 13 (citing Arizona v. Fulminante, 499 U.S. 279, 309 (1991)).

We view the offending words in the presumption instruction as more ambiguous than contradictory. Internally, the thrust of the instruction was to define presumptions in general.

Certainly, the instruction does not approach the instructions given in the capital cases cited in Mr. Frost's brief, Francis and Sullivan. Francis involved a very detailed instruction which could be read as creating a mandatory presumption with respect to the critical issue of intent, and having the effect of entirely shifting the burden of proof from the government to the defendant. The Court, in Francis, summed up its reasoning as follows:

> Because a reasonable juror could have understood the challenged portions of the jury instruction in this case as creating a mandatory presumption that shifted to the defendant the burden of persuasion on the crucial element of intent, and because the charge read as a whole does not explain or cure the error, we hold that the jury charge does not comport with the requirements of the Due Process Clause.

Francis, 471 U.S. at 325. The Court then skirted the question of harmless error, essentially relying on the court of appeals' finding in that regard.

In Sullivan, the Court addressed a reasonable doubt instruction which all parties conceded was erroneous, and went on to consider the applicability of harmless error. The circumstances in Sullivan could in no way be considered apposite to the instructions in the case before us. We conclude that the challenged instructions in this case did not rise to the level of a structural constitutional error.

-11-

Accordingly, our usual standard of review applies to the challenged language in the instruction in question.

> Jury instructions are reviewed de novo as a whole and are viewed in the context "of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant issues in the case." *United States v. Bedford*, 536 F.3d 1148, 1152 (10th Cir. 2008) (internal quotation marks and citations omitted). The district court's decision to give or refuse a particular instruction, and the shaping or phrasing of a particular instruction are reviewed for an abuse of discretion standard. Id. at 1152. The Court will only reverse where it has "substantial doubt that the jury was fairly guided." *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir. 1994) (internal citations omitted).

Appellee's Answer Br. at 16-17.

Mr. Frost argues in the alternative that even if analyzed for harmlessness beyond a reasonable doubt, the instruction in question mandates reversal, especially since the evidence of guilt was allegedly thin.

In response, the government acknowledges that the last paragraph of the presumption instruction might be problematic if viewed in isolation, but the government points out that the language in question was preceded by more general language in the instruction, and preceded and followed by strong and clear instructions on the presumption of innocence and reasonable doubt. Similarly strong and clear instructions on those latter subjects were given and emphasized by the court in other places, including at the beginning of the trial.

-12-

In addition, the government emphasizes the following instruction given by the court:

CONSIDER WHOLE INSTRUCTIONS

You are not to single out any certain sentence or any individual point or instruction and ignore the others, but you are to consider all the instructions as a whole. You are to regard each instruction in the light of all the other instructions.

Appellee's Answer Br. at 18 (citations omitted).

Applying the applicable standard, we conclude that the instructions as a whole correctly guided the jury and that there was no reversible error.

## CONCLUSION

For the reasons stated above, Mr. Frost's conviction is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge